### SHULER *v.* THE STATE.

1. In view of the provisions of the act creating the city court of Bainbridge, which declares generally that defendants in criminal cases in that court "may be tried on written accusation founded on affidavit," without prescribing the particular officer or officers before whom the affidavit may be made, an accusation may be framed upon an affidavit

attested by a commercial notary public, by virtue of the authority to administer oaths conferred upon such officers by the Political Code, § 503.

2. The mere identity of name appearing from the signature of the attesting officer and that of the person who signed the accusation as prosecuting attorney will not warrant the assumption, as matter of law, that the same individual acted not only as a notary public but also in the capacity of solicitor of the city court.

3. Where one is charged with selling intoxicating liquors without a license in a county where a license may be lawfully issued, it is unnecessary to allege in the accusation that the illegal sale occurred within the limits of an incorporated town or city having authority to grant a license, since a sale made in any part of the county, without first obtaining a license from the proper authorities, would constitute a misdemeanor. Nor is it incumbent on the State to allege the name of the person to whom the liquors were sold or the precise consideration paid therefor.

4. A sale of intoxicating liquors, although made upon the Sabbath day, may nevertheless be a violation of a statute making penal the sale of such liquors without a license, which is an independent offense from that of keeping open a tippling-house on the Sabbath day.

Argued May 21,—Decided July 3, 1906.

Accusation of unlawful sale of liquor. Before Judge Harrell. City court of Bainbridge. April 10, 1906.

E. S. Longley, for plaintiff in error.

M. E. O'Neal, solicitor, by R. R. Arnold, contra.

Evans, J. Shuler was convicted of a misdemeanor, in the city court of Bainbridge. The accusation was founded upon an affidavit signed by the prosecutor and made before M. E. O'Neal, notary public of Decatur county, Ga. The charge set forth in the accusation was, that "the said Nath Shuler, on the 1st day of October in the year 1905, in the county aforesaid, then and there unlawfully and with force and arms did, for a valuable consideration, sell by retail spirituous, vinous, and malt liquors, without first having taken the oath prescribed by law and without first having obtained a license from the authorities authorized by law to grant license for the sale of such liquors by retail, contrary to the laws of said State," etc. The accusation was signed: "M. E. O'Neal, Solicitor; W. H. Scott, Prosecutor." The defendant demurred to the accusation, on the grounds: (1) that it was based on an affidavit made before M. E. O'Neal as a commercial notary public, and not before an officer authorized by law to issue warrants; (2) that O'Neal could not lawfully serve in the dual capacity of solicitor of the city court and notary public, as he had attempted to do by framing an accusation upon an affidavit which he had at-

tested; (3) that the accusation was defective in not alleging that the sale was made within the limits of an incorporated town or city authorized to grant license for the sale of liquor; (4) that the accusation failed to allege that any consideration was had, the amount of money, or the persons to whom the illegal sale was made. The demurrer was overruled, and the defendant filed exceptions pendente lite. The case came on to be tried on the merits, and the trial resulted in a verdict of guilty. The defendant moved for a new trial, his motion was overruled, and he excepted.

1. The act creating the city court of Bainbridge (Acts of 1900, p. 111, sec. 28) provides that defendants in criminal cases in that court "may be tried on written accusation founded on affidavit, which accusation shall be signed by the prosecuting officer of said court." There is no requirement that the affidavit shall be made before the city-court judge or any other judicial officer; there is no restriction whatever as to the officer before whom the affidavit shall be made, other than that he be such an officer as is authorized by law to administer an oath. Notaries public are given authority, by the Political Code, §503, "To administer oaths in all matters incident to them as commercial officers, and all other oaths which are not by law required to be administered by a particular officer." There is no general statute which expressly or by necessary implication prohibits notaries public from attesting affidavits designed to be used in judicial proceedings, civil or criminal, nor does the act creating the city court of Bainbridge make it the duty of the trial judge or of any judicial officer to attest the affidavits intended to be the foundation of accusations drawn up by the solicitor. We have examined the acts establishing the various constitutional city courts, and because of the variety of the provisions relative to the manner of making the affidavits upon which accusations are founded, we can not deduce any public policy as to the propriety of limiting the making of such affidavits before judicial officers, though in some instances this plan has been expressly prescribed. Even should we concede the truth of the proposition that an affidavit made before a commercial notary public will not authorize the issuance of a warrant by a judicial officer, it does not follow that such an affidavit does not furnish the foundation for an accusation under the terms of the act creating the city court of Bainbridge.

In the county court, the statute provides that the judge shall

"frame a written accusation based upon the affidavit charging the defendant." Penal Code, §753. In discussing this statute, Bleckley, J., in *Dickson* v. *State,* 62 *Ga.* 588, said that the affidavit on which a warrant was issued was the one to which the statute referred as the basis for the accusation; but added, that, while this was true, the court was not prepared to say that no other would serve, and that probably "any other, though made after the arrest, and expressly to base the accusation upon, especially if more certain and precise in its terms, would answer the purpose." If a notary public has the authority to administer the oath to the affidavit to be used as the basis of an accusation, perjury could be assigned upon the affidavit. The accusation and the affidavit upon which it is predicated form the pleadings by which the defendant is informed of the nature of the charge preferred against him. Inasmuch as there is nothing either in the general law or the local act prohibiting a commercial notary public from attesting the affidavit, we see no reason why the remainder of the pleadings, to wit, the accusation, can not be based on such affidavit, although it may not furnish the basis for issuing a warrant for the apprehension of the defendant. It may not be necessary to issue any warrant for his arrest. *Brown* v. *State,* 109 *Ga.* 572-573. If so, a warrant could be issued upon another affidavit made before some judicial officer, and after the arrest of the accused no reason occurs to us why he could not be brought to trial on the accusation founded on the affidavit made in the first instance before a notary public. See State *v.* Mullen, 52 Mo. 430; State *v.* Freeman, 59 Vt. 661.

2. The demurrer assumes that the notary public who attested the affidavit was the same person who subsequently, as solicitor of the city court, joined with the prosecutor in signing the accusation. We can not, because of the mere coincidence in names, infer as matter of law that the same individual was both the notary public and the solicitor. If the defendant desired to have the court below rule on the question whether or not the same person could act in the dual capacity of notary public and prosecuting attorney, in first attesting the affidavit and then framing an accusation thereon, the defendant should have presented this question by a plea in abatement and submitted evidence as to its truth, if the same was not admitted. *Hays* v. *Eubanks,* 125 *Ga.* 349. Clearly, this question could not be raised by a "speaking" demurrer; and unless the ac-

cusation was upon its face fatally defective, because of the identity in name of the notary public and the prosecuting officer, the refusal of the trial judge to quash the accusation was eminently proper. "Generally speaking, identity of names is *prima facie* evidence of identity of persons." 15 Am. & Eng. Enc. Law (2d ed.), 918. But this assumption is merely a rule of evidence, designed to. facilitate the trial of cases and relieve parties of the hardship of making positive proof of facts which may reasonably be inferred, and the presumption which the law permits to be indulged as to such identity of persons is by no means conclusive, nor will it arise "if the circumstances of the case or the common character of the name be such as to raise a doubt of the identity." Ibid. 919. For instance, it has been held that where the attesting witness to a deed appears to have the same name as the person therein named as grantee, the presumption will not be warranted that the grantee and the witness were one and the same person, since it would be absurd for a grantee to undertake to attest a deed made to himself. Liddon *v.* Hodnett, 22 Fla. 443 (7), 453. So, also, it has been decided that no presumption as to identity is to be indulged where the plaintiff and the defendant in an action appear to bear. the same name (Wilson *v.* Benedict, 90 Mo. 208), and that the identity of persons referred to in the pleadings of the plaintiff is a "matter which lies in plea and averment, and the identity can not be assumed from the declaration." Suttles *v.* Whitlock,. 20 Ky. 451. "The tendency of the courts is to relieve parties from the *onus* of providing identity, it being, in general, more easily disproved than established." *Mullery* v. *Hamilton,* 71 *Ga.* 720. The courts have not, however, in giving recognition to the doctrine, approved in that case, that "concordance of name alone is always some evidence of identity," abolished any of the well-established rules of pleading, or suffered it to be invoked in a case such as the present. In Allin *v.* Shadburne's Executor, 31 Ky. 68, suit was brought on a bond executed by Thomas Shadburne and *James Allin* and made payable to the plaintiff and another, as executors. The plaintiff, *James Allin,* brought the suit as surviving executor. The defendants demurred to the plaintiff's declaration, on the ground that "James Allin, the obligor, and James Allin, the obligee, were but one and the same person." The trial court overruled the demurrer, and its judgment thereon was sustained by the reviewing court for

the reason that there could be no "legal deduction, from the identity of names, . . that *'James Allin,'* the obligor, is *'James Allin,'* the obligee." In the case before us, the trial judge could not, upon demurrer to the accusation, conclusively presume that the affidavit on which it was founded was attested by the solicitor, rather than by another person of the same name, acting in the capacity of a notary. It was not incumbent on the State's counsel, nor was he at liberty, to submit evidence disclosing the truth in this regard; for the court, in passing upon the merits of the demurrer, could not properly look beyond the pleadings which were assailed. *Candler* v. *Kirkland,* 112 *Ga.* 459; *Pattillo* v. *Jones,* 113 *Ga.* 333. When such an issue of fact is involved, the law does not contemplate that the presiding judge shall be called on by demurrer to hear evidence and decide the issue without the intervention of a jury. On the contrary, a logical and orderly method of procedure is prescribed for bringing to the attention of the court the objections to the accusation upon which the defendant desires to insist. By plea in abatement, his objections may be clearly stated; he may sustain his contentions of fact by offering direct and positive evidence or by relying upon any legitimate legal presumption which will suffice to shift the burden of proof upon the opposite party; counsel for the State will be afforded an opportunity to demur to the plea in abatement and to offer such evidence as may be in his power to produce; and thus the truth may be, not vaguely surmised, but clearly brought to light; or, if a doubt be presented as to what is the truth, then the propriety of indulging no idle presumption becomes apparent, and that doubt may be left to a jury for solution. Where, as in this case, two official signatures present a similarity of name, but not of official capacity, it would seem that if any presumption at all is to be indulged, it should be that the signatures are those of different persons. Lawson on Presumptive Ev. 256.

3. It was not necessary to allege a sale within the limits of an incorporated town or city which was authorized to grant a license, since, under the act of December 24, 1890 (the provisions of which are now incorporated in the Penal Code, §433), it is a misdemeanor to sell spirituous, vinous, or malt liquors, "in any quantity, anywhere in this State, without a license," (*Hardison* v. *State,* 95 *Ga.* 337) ; and one illegally selling such liquors should be prosecuted for a violation of that act, unless the sale was made in a

county in which the sale of intoxicating liquors is prohibited altogether under the terms of the general local option law. *Batty* v. *State,* 114 *Ga.* 79. "If the selling is done in an incorporated city, town, or village, the municipal authorities of which have authority to grant liquor licenses, the license must be obtained from those authorities; if elsewhere, it must be obtained from the county authorities." *Hardison's* case, supra. Under the express ruling made in that case, an indictment or accusation alleging that the sale was made "without first obtaining a license therefor from the authorities authorized by law to grant license for the sale of such liquors," is sufficient as to the matter of negativing the possession of license by the accused by either the municipal or county authorities. It is not incumbent on the State to allege what was the precise consideration moving to the seller, or to set forth in the accusation the name of the buyer, or to go into other details regarding the illegal sale. *Wells* v. *State,* 118 *Ga.* 556. For none of the reasons assigned in the demurrer was the accusation in the present case open to criticism.

4. The evidence for the State disclosed that the accused had been guilty of selling whisky without a license to persons who came to his house for the purpose of procuring liquor on the Sabbath. Counsel for the accused insists that the offense committed, if any, was that of keeping open a tippling-house on the Sabbath day, and not that of selling without a license. There is no merit in this contention. *Moran* v. *Atlanta,* 102 *Ga.* 840; *Williams* v. *Augusta,* 111 *Ga.* 849. "The offenses of retailing liquor without license and keeping open a tippling-house on the Sabbath day are separate and distinct. Neither of them is a necessary element in and essential part of the other. Either of them may be committed without perpetrating the other." *Smith* v. *State,* 105 *Ga.* 726. In fact the evidence in the present case showed that the accused sold whisky by the pint to parties who came to his house for it but who did not drink it upon the premises.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*