## GRAY LUMBER COMPANY *v.* HARRIS.

1. The sayings of a director and superintendent of sawmills of a lumber company, while acting in the place of the president who was sick, and while such agent was engaged in superintending the construction of a trestle across a river in the direction of and about a mile from certain timber, claiming the timber as belonging to the company, and stating that they were going across to get it, were admissible in evidence, there being testimony that some of the timber was actually cut by the defendant's agents.  Such evidence was admissible, not to show that the company had good title to the timber, but that it was making claim thereto, and was intentionally proceeding for the purpose of getting it, thus negativing the idea that the cutting was accidental, or by mere mistake in the location of lines.

2. A deed which shows on its face that it is executed in one county before a notary public of another county is not properly attested for record, and is not, by virtue of such attestation and recording under it, rendered admissible either as title or color of title.  *Allgood* v. *State*, 87 *Ga.* 668(6) ; *Livingston* v. *Hudson*, 85 *Ga.* 835(4).

3. The ruling on this subject would not, if erroneous, cause a reversal. The deed referred to in the preceding note, which was excluded, was to the common propositor, whose title was not disputed.  Moreover, complaint was made that it was not admitted as color of title; but it appears to have been offered only as a recorded instrument, without proof of execution.

4. A deed not properly attested or probated for recording was not rendered admissible in evidence as a recorded deed because the maker, some months later, endorsed on it a power to the grantees to sell all the rights and privileges previously conveyed by the deed to them, and this power was witnessed and it and the deed were both recorded together.

5. There was no error in granting a nonsuit.

Submitted July 18,—Decided December 14, 1906.

Trespass. Before Judge Hodges. City court of Macon. December 18, 1905.

The Gray Lumber Company, a corporation, brought an action of trespass against E. G. and Mary Harris, doing business under the name of the Dooly Lumber Company, alleging that they had unlawfully cut certain timber belonging to the plaintiff. The defendants denied that the plaintiff owned the timber, but claimed that it belonged to them, and that they had a right to cut it. Both parties claimed under John Vickers Jr. (spoken of also as Johnnie Vickers), signing as John Vickers. The plaintiff's chain of title was as follows: A conveyance from said Johnnie Vickers to E. L. and H. Vickers, dated September 18, 1889, conveying the timber suitable for sawmill and turpentine purposes on certain described land. The bill of exceptions stated that "It is provided in said deed that said grantees should have three years from the date of beginning to cut boxes in said timber, in which to work said turpentine timber, and three years from the date of beginning to remove the sawmill timber, in which to remove the same, and that they should have the right of way over said land, except the cleared lands thereof, for tramway purposes, for a term of twenty years." On June 23, 1890, E. L. and H. Vickers conveyed to Timmons & Co., a firm composed of W. W. Timmons and H. L. Covington. On June 10, 1899, Timmons conveyed his undivided one-half interest to Covington. By a conveyance dated October 20, 1903, Covington conveyed to plaintiff the timber on the lands in dispute, and on other lands. It appeared from the pleadings that the defendants claimed the timber by a deed from John Vickers Jr., to Peter Vickers, dated February 3, 1903, and transferred to defendants. Some other conveyances back of Vickers, including one from his wife to him, were introduced, none of which need be set out. At the close of the plaintiff's evidence, on motion the court granted a nonsuit, and the plaintiff excepted.

*Lankford & Dickerson,* for plaintiff.

*Lane & Park,* for defendants.

Lumpkin, J. (After stating the foregoing facts.)

1. Objection was made to the admission of the sayings of H. L. Gray, a director and superintendent of sawmills of the plaintiff. It appears that at the time he made them he was acting in the place of the president who was sick, and was engaged in superintending the construction of a trestle across the river in the direction of the timber, claiming it as belonging to the company, and stating that they were going across to get it. This evidence was admissible. It did not show title in the plaintiff, but was competent to show that the plaintiff claimed the timber and was intentionally proceeding and taking steps for the purpose of getting it or some of it, and to negative the idea advanced that the cutting of any of the timber by the plaintiff or its agents at that time was unintentional or accidental.

2, 3. The rulings on the admission of evidence, stated in the second and third headnotes, sufficiently appear in them.

4. In regard to the ruling stated in the fourth headnote, an endorsement on a deed made at the time of its execution, and as part of the deed, and recorded with it, has sometimes been held admissible. *Dykes* v. *McVay,* 67 *Ga.* 502; 13 Cyc. 616, and notes. But an endorsement made at a later date has been held to be no part of the deed. Williams v. Handley, 6 Ky. (3 Bibb) 10. The endorsement of the power of sale on the deed was no part of the deed. If the deed became so far a part of the power as to afford, by reference, an explanation of the property to which the power applied, still it was at most, in this view, only a part of such power, and not an independent conveyance. Probating the power by one of the witnesses thereto for the purpose of recording it would not be a probating of the deed as a conveyance. If the deed was recordable at all on such proof, it was only as a part of the power; and the power did not constitute a new conveyance, as was the case in Noyes v. French Lumbering Co. (Minn. 1900), 83 N. W. Rep. 385. The plaintiff desired to introduce the deed as such for the purpose of showing a conveyance of title. Mere proof of a power to sell could not have benefited it; and the rejection of the power, if erroneous, would not cause a new trial.

The name of a witness to the power of attorney was the same

as that of one of the persons to whom it was made. A grantee can not be an attesting witness. Croft v. Thornton, 125 Ala. 391, 28 So. Rep. 84. But whether the identity of name alone would be sufficient prima facie evidence of identity of person—that the grantee and the attesting witness were the same person—to authorize a rejection of the instrument from evidence on that account, is not clearly settled in this State. In Shuler v. State, 125 Ga. 778, 782, the subject was discussed, but a similarity of names was there met by a presumption arising from the occupying of two official positions, and the case arose on a demurrer to an accusation. The occupancy of inconsistent positions is also mentioned.

5. Was the grant of a nonsuit proper? Covington owned leases covering timber on the lots in question by conveyances under John Vickers Jr., and also owned other timber. He had an agreement or understanding with Gray, who became the president of the Gray Lumber Company on its formation (which agreement continued as applicable to the company), that he would sell the timber to Gray, and the latter could pay for it, a lot at a time, as it was wanted. He said: "I want you to help me out and cut the timber that the leases are shortest on." Gray testified that he paid Covington for a great number of those lots of timber "in staves and headings and by hauling rosin;" that under no circumstances was he to cut the timber on any lot until he paid for it, but he could have cut the timber on any lot Covington had by first paying for it. The deed from Covington to the plaintiff, including the timber in dispute and that on other lots, was executed in October, 1903. Gray further testified that he did not remember when he made the payments for the lots embraced in the deed, but that the last payment was at the time when it was executed; that he paid for the timber before the deed or lease to the plaintiff and after the lease or conveyance had been executed to the defendant by Vickers, although he did not know of it at the time. He wrote to a member of the defendant firm in September, seeking to prevent them from cutting the timber. He testified that he did not authorize his woodsman or any one acting for the Gray Lumber Company to cut any of the Vickers timber until he paid for it. But whether he was the only source of authority to act for the company is not made clear. At another time he said: "I think that I cut some of the lots embraced in the Covington

·deed, several years before it was executed, but I paid for every one before I cut it." Also, "Of course I cut some of the lots of Covington before the lease was made to us by H. L. Covington. . . Under that understanding I could have cut timber on any lot he had by having first paid the money." The evidence introduced by the plaintiff itself shows that the timber was worked for turpentine purposes shortly after the lease or conveyance by Vickers in 1889, for about three years, and that after such work was finished some ·of the timber on the lots involved in the controversy was cut by the plaintiff's woodsman. Vickers, the owner of the land, testified, that he understood that this was done under the lease which he had made to E. L. & H. Vickers; that the first cutting of the sawmill timber on the east side of the river was seven or eight years before the trial; that the woodsman of the plaintiff cut it and carried it off; that plaintiff built a trestle across the river for a tramway about a mile from the timber; and that the superintendent of the plaintiff's sawmills, who was overseeing the building of the trestle and acting for the president during his sickness, talked to Vickers and said that the company owned the timber on the lots now involved and was going across to get it. Vickers told him that the plaintiff only owned the timber on one half of one of the lots; but Gray consulted a paper which he had, and claimed that they owned it all. Vickers called the attention of one of the men, who was cutting timber, to the time when the cutting began.

It is evident that the plaintiff did cut and carry away timber from the land involved in the controversy, and that more than three years elapsed thereafter before the conveyance by Vickers to the defendant, or that by Covington to the plaintiff. It is also ·clear that it was not a mere accident, but that the agents of the plaintiff who did the cutting and carrying away claimed the right to do so, and asserted that it owned the timber. It sets up no right ·except that which it acquired under Covington. It may have been that, under the plaintiff's agreement with Covington, payment ·should have preceded the cutting. But there was some cutting, and afterwards payment and later still conveyance. It does not ·appear that Covington made any objection; and the plaintiff can hardly claim that its own act was premature, and therefore was not a beginning of cutting at all under the terms of the lease, by virtue of which alone cutting could be lawfully done either by

Covington or the plaintiff. There was no error in· granting a nonsuit.

The rulings in regard to pleadings can not affect the affirmance of the judgment granting a nonsuit.

*Judgment affirmed. All the Justices concur, except Atkinson, J., dissenting.*