2360. GRAY LUMBER COMPANY *v.* HARRIS *et al.*

1. Where, on reviewing a judgment of nonsuit, the Supreme Court has rendered a decision which could not have been correctly rendered, as rendered, if a certain insistence of one of the parties had been considered well taken, it will, in future trials of the case, be construed as a decision against that insistence, although the matter is not mentioned in the course of the opinion.

2. Where the vendor of standing timber sells it to another, and in the conveyance makes a stipulation by which the right to cut the timber is to terminate upon the expiration of three years from the time the vendee or his assign begins to cut it, the three-year period will not be started to running by the act of an outsider in entering upon the lands and cutting a portion of the timber without the consent of the vendee or his assign; aliter if the person doing the cutting has authority to do so from the then holder of the title to the timber under the conveyance mentioned.

(a) In a case like that just mentioned, if the person who wrongfully did the cutting should, more than three years thereafter, purchase the timber rights from the person who owned them at the time of the unauthorized cutting, his prior trespass, in having entered upon the timber and cut a portion of it without authority, would not operate to forfeit the title to the timber, on the theory that the period of three years had expired since he (the person thus acquiring the title) had commenced to cut it.

3. Though standing timber is realty and a conveyance of standing timber should be in writing, yet where such a conveyance contains a clause whereby the vendee's right to cut the timber is to expire within a certain time after the happening of a designated act, the vendor may orally waive his right to insist upon counting the time of his limitation as·

running because of the happening of an act which, but for his waiver, might be considered as the starting point.

4. The plaintiff in trespass recovers on the strength of his own title, and not on the weakness of the defendant's. The alleged error in respect to the admission of testimony in regard to the asserted title of the defendant in this case was immaterial.

DECIDED JULY 19, 1910.

Action for damages; from city court of Douglas—Judge Wall presiding. November 19, 1909.

*Lankford & Dickerson,* for plaintiff.

*Lane & Park, J. W. Quincey,* for defendants.

POWELL, J. The Gray Lumber Company brought trespass against Harris et al. for the cutting of the pine timber suitable for sawmill purposes off certain lands in Coffee county. The plaintiff proved title to the lands in John Vickers, and then showed conveyances as follows: A deed dated September 18, 1889, from John Vickers to E. L. and H. Vickers, conveying the timber in dispute, and providing that the grantees were to have three years, from the date of beginning to remove the sawmill timber, in which to remove the same. Also a conveyance of the same timber from E. L. and H. Vickers to W. W. Timmons and H. L. Covington, dated June 23, 1890. Also conveyance from W. W. Timmons to H. L. Covington, dated June 10, 1899, transferring to him an undivided half interest in the timber in dispute; thus putting the entire title in Covington. Also a conveyance from H. L. Covington to the Gray Lumber Company, dated October 20, 1903, conveying not only the timber in dispute, but also the timber on many other lots of land in the same county. The plaintiff proved the value of the timber; and it was admitted that in the year 1904 the defendants cut and carried the timber away. The defendants introduced in evidence a conveyance from John Vickers to Peter Vickers, dated February 3, 1903, conveying the timber in dispute; and showed that Peter Vickers, in March, 1903, transferred this conveyance to the defendants. Both parties, therefore, claim under a common grantor, John Vickers; and so far as the question of title is concerned, it depends merely upon a comparison of the rights of the parties as respectively derived from John Vickers. No question of notice is involved, as the plaintiff's conveyances were duly recorded. The case mainly hinges upon the fact that in the year 1897 the employees of the Gray Lumber Company, while cutting other timber in the vicinity

of the timber in dispute, cut some few trees, variously estimated as being from four to seventy, upon the lands in dispute. The contention of the defendants was that the three-year period designated by the lease, after which the right to cut the timber under the lease would expire, began to run from the date of this cutting in 1897, and that Vickers had the right to resell the timber after three years from that time. The plaintiff, however, insisted that it owned the title to the timber in fee, and that the restriction as to the time of cutting was a covenant, and not a condition; also that the cutting of the timber in 1897 having been done at a time when the title to the timber was not in the Gray Lumber Company, which did the cutting, but in Timmons and Covington, the trespass of the Gray Lumber Company could not have operated to give a starting point for the running of the three years after which the rights of Timmons and Covington under the lease would expire; also that, even conceding that this cutting of the timber did operate as a starting point from which the three years were to be counted, Vickers, the owner of the reversion, had waived any right to insist upon this act as being sufficient to put the limitation clause of the lease into operation.

A previous suit between the same parties as to the same subject-matter has been before the Supreme Court for adjudication. See *Gray Lumber Co.* v. *Harris,* 127 *Ga.* 693 (56 S. E. 252). In that case a judgment of nonsuit was affirmed. In the present case the court directed a verdict for the defendants.

1. We consider that the decision of the Supreme Court has settled (at least so far as the present case is concerned) that the limitation clause of the timber conveyance from John Vickers, under which the plaintiff claimed, was such as to cause the estate held by the grantees in the timber to terminate within three years from the time that the grantees in that lease or any other person authorized by them began to cut the timber. If the point that the limitation clause in the lease was not a limitation upon the title, but merely a limitation upon the right of ingress and egress (i. e. was a covenant and not a condition), were well taken, it would have been a sufficient reason for the Supreme Court to have reversed the former judgment of nonsuit. Only upon the theory that the lease had terminated by the fact of the cutting and the running of the three years thereafter can the affirmance of the judgment of nonsuit be

justified, under the facts presented by the record in the case then before the Supreme Court; and, therefore, while the court did not in express language refer to this feature of the case, the judgment rendered must be taken as having by necessary implication decided this branch of the plaintiff's case adversely to it.

2.  The evidence was substantially different on the trial under review from what it was on the former trial, as appears from an examination of the facts set out in the course of the opinion of the Supreme Court, and a comparison of them with the evidence in the present record.   From the evidence on the former trial it appeared plainly that when the Gray Lumber Company, in 1897, did the cutting upon the timber in dispute, it did so intentionally, and with the consent of Covington, who was then the holder of the legal title to the timber under the first Vickers lease.   In the present record the defendants, in order to establish this element of the case (that the cutting was done intentionally and by the consent, actual or implied, of Covington), offered two witnesses who testified as to the declarations of one H. L. Gray, an employee of the plaintiff corporation, alleged to have been made just before the timber was cut, that they had bought this timber from Covington and were going to cut it.   However, Mr. Gray, as a witness on the trial, denied making any such statement.   The woodsman of the Gray Lumber Company was introduced as a witness for the defendants, and testified that at the time this cutting in question was done, he understood that the Gray Lumber Company had bought the Covington timber.   He testified to some conversation had with one of the Messrs. Gray on the subject, but admitted, on cross-examination, that he did not know whether the Gray Lumber Company did at that time own the Covington timber or not; and that he did not remember whether Mr. Gray told him that he had bought the timber, or merely that he had bargained for it, or merely had an option on it.   He further testified that at the time he did this cutting, he was under the impression that the Gray Lumber Company had bought all the timber owned by Covington, but later found that they had bought only part of it.   Fairly construed, the testimony of this witness is susceptible of no other construction than that at the time this cutting was done, Mr. Gray had said something to him about either having bought the Covington timber or some part of it, or having bargained for it, or having taken an option on it,

and that the price was to be $325 per lot, to be paid before they should have the right to cut it. The expression, "the Covington timber," it must be kept in mind, included a large amount of timber other than that contained in the tract in question. It was, therefore, under the evidence in the present case, issuable as to whether the Gray Lumber Company, at the time of the cutting of the few sticks of timber on the tract in dispute, had any right to do so, under color of any authority from the then owners of the timber. The written conveyance which they acquired from Covington was dated several years after the cutting in question was done. As the court directed the verdict for the defendants, the plaintiff is to be given the benefit of all issues of fact and the inferences to be drawn therefrom; and in this view of the evidence, it may be stated that it does not appear that the cutting in question was done with the consent, actual or implied, of Timmons and Covington, or of either of them. The jury would have had the right to find that the cutting was a mere trespass, having been committed either intentionally or under some mistake of right or of fact.

Defendants' counsel insist that the decision of the Supreme Court has adjudicated adversely to the plaintiff the point we are now discussing. The Supreme Court merely decided the case then before it, upon the facts there presented; and we have before us a state of facts substantially different in principle. We can not agree with counsel for defendants that the Supreme Court intended to hold, or did hold, that if the Gray Lumber Company trespassed on these lots in 1897, with no authority from the then owners of the timber conveyances to do so, this would operate to give a starting point from which the time mentioned in the limitation in the conveyance would begin to run, either generally as against all persons, or specially as against the Gray Lumber Company, upon its afterwards purchasing the timber from the then holders of the conveyance. If we understand the Supreme Court decision, what they held was that if the Gray Lumber Company cut this timber with the authority of the holders of the timber conveyances, it would operate to start the limitation period to running; and that Mr. Gray's admissions that they were then the owners of the tract of timber, and that they had bargained for it from Covington, were sufficient to prove that the cutting was in fact done under the conveyance held by Covington, or by his consent. It seems too plain

to admit of argument that if the Gray Lumber Company, in 1897, did the cutting without the consent or authority of Timmons and Covington, who then held the title to the timber as derived through the Vickers conveyance, it merely committed an act of trespass against Timmons and Covington, and that no act of the Gray Lumber Company could start the running of the limitation contained in this conveyance thus adversely held by the other persons. This being true, it follows that in 1903, the date on which Covington did convey to the Gray Lumber Company, he still held the legal title to the timber, and that the beginning of the limitation period had not then arrived. This being so, it must follow that Covington could convey the title to the timber to the Gray Lumber Company. But say the defendants: "Although as against Covington, or Timmons and Covington, the prior tortious cutting done by the Gray Lumber Company would not have given a starting point for the running of the time under the limitation clause in the conveyance, yet when the Gray Lumber Company became the holder of the rights formerly granted by Vickers, the transaction related back, so that as against the Gray Lumber Company, its act is to be considered as sufficient to have started the time to running." We can not concede this; for to impose such a penalty upon the Gray Lumber Company for its trespass would be to impose it indirectly upon Covington. It may be seen that if such were the legal result of the transaction, Covington would have been deprived of one of the most valuable rights which he had under the conveyance,—the right to sell the timber to whomsoever would give the most for it. It is very probable that in 1903 the Gray Lumber Company, owing to the location of its sawmills and tramroads, was in a position to give more for this timber than any other prospective purchaser to whom Covington might have contemplated selling it; and yet if the contention of the defendants were to be considered well taken, Covington, howsoever unconnected he might have been with the commission of this trespass back in 1897, could not have sold the timber to the Gray Lumber Company; for, of course, a sale which could pass nothing, on account of the forfeiture which would immediately ensue, would in all fair contemplation have been the same as no sale at all. We know of no principle of law or of equity which would thus impair the rights of the holder of the legal title to sell and convey, on account of the act of a trespasser. The proposition

here asserted is analogous to that stated in the Civil Code of 1895, § 3938, that "if one without notice sell to one with notice, the latter is protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value." See also *Collins* v. *Heath,* 34 *Ga.* 443. There might have been some difference in principle if the cutting had been a trespass against Vickers.

It is very probable that the full facts of the transaction have not been developed in the evidence. It may be that if the whole truth were known, the Gray Lumber Company did have authority from the owner of the timber to cut it in 1897. If so, then, under the decision of the Supreme Court when the case was up before, the verdict should be for the defendants, unless Vickers waived his right to insist that this act of cutting a few sticks of timber in 1897 started the limitation period to running.

3. A sale of standing timber is a sale of realty, and is within the statute of frauds, and, consequently, requires a written convey-ance. Nevertheless, where such a conveyance contains a clause which forfeits the timber for non-removal within a designated time, the right to insist upon the time limit may be waived orally. See Wallace *v.* Kelly, 148 Mich. 336 (111 N. W. 1049, 118 Am. St. Rep. 580) ; *Morgan* v. *Perkins,* 94 *Ga.* 353 (21 S. E. 574). In the Michigan case cited, it appears that the waiver was based on con-sideration. The Georgia case is silent as to this point. Waiver, however, usually needs no consideration to make it effective. "Waiver is a voluntary relinquishment of some known right, ben-efit, or advantage, which, except for such waiver, the party other-wise would have enjoyed." See the very excellent discussion as to the elements of waiver, by Judge Russell, in *Kennedy* v. *Manry,* 6 *Ga. App.* 816 (66 S. E. 29). Waivers not based on consideration have been too frequently enforced by the courts to demand any citation of authority for the proposition that consideration is not an essential of waiver. There was some evidence in this case that Mr. Vickers, the owner of the reversion, after the time of the cutting in 1897 and within less than three years thereafter, told the woodsman of the Gray Lumber Company that on account of the previous cutting, the lease would soon expire; and upon the woodsman's saying that if this was so he would hurry to get it off, Mr. Vickers replied that he need not bother about that, as he had gotten pay for it once and that was all he wanted, and that the

lumber company could cut it when they got to it; and the woods-man reported this conversation to the president of the company. It is true that Mr. Vickers denied this conversation to some extent, but this presented a question of fact for the jury, and not for solution by direction of the verdict. It was for the jury, under the evidence, to say what was the language of Mr. Vickers, used on the occasion in question, and whether he expressed at that time an intention not to insist upon the forfeiture, if any, which was about to come about through the previous cutting.

4. There is one other exception in the record. The plaintiff insists that the court erred in admitting in evidence in behalf of the defendants a transfer to the plaintiff of the second conveyance made by John Vickers. The point the plaintiff makes is that this transfer purports to assign the conveyance, and not the title to the timber. There is no merit in this point. The case turned on the strength of the plaintiff's title, and the strength of the defendants' title was not involved. We reverse the judgment because the court erred in directing the verdict, since there was evidence to support a finding for either party.                    *Judgment reversed.*