HUTCHISON v. NEW YORK & PENNSYLVANIA CO.

(Circuit Court of Appeals, Fourth Circuit. December 17, 1915.)

No. 1342.

Logs and Logging ⊜⇒3—Construction of Executory Contract—Premature Action for Breach.

Plaintiff contracted to sell to defendant all the pine trees and wood on a tract of land which defendant should deem suitable for its use as pulpwood, and which it should be able to cut and remove within five years, to be paid for by the cord. Defendant agreed to pay each month a part of the price for the wood which it removed and piled for seasoning at a railway station during the preceding month, and to pay the remainder on shipment to its mills. It also agreed to cut all suitable pine trees of a certain size as it went, at not more than one foot from the ground, and unless prevented by the elements or other causes beyond its control to cut not less than 10,000 cords per year. After three years plaintiff brought an action to recover damages, based chiefly on defendant's failure to cut and remove the required quantity in any one year, but also alleging breach of the other provisions and that defendant had failed to remove some of the wood cut, but left it in the woods to decay. *Held*, that the contract was executory, that the requirement that a certain quantity should be cut each year was an inseparable part of it, and that as plaintiff did not terminate it, but continued to receive the payments made, he could not maintain an action for its breach until the expiration of the term for complete performance. *Held*, further, that the provision for payment each month for the wood cut and removed during the preceding month was separable, and required defendant to remove and pay for all wood cut within a reasonable time, that for all wood cut and not so removed plaintiff was entitled to recover payment, and that whether defendant failed to comply with such requirement, and, if so, to what extent, where questions for the jury.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⊜⇒3; Contracts, Cent. Dig. §§ 890–898.]

Woods, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Virginia, at Alexandria; Edmund Waddill, Jr., Judge.

Action at law by H. B. Hutchison against the New York & Pennsylvania Company. Judgment for defendant, and plaintiff brings error. Reversed.

John S. Barbour, of Fairfax, Va., and C. E. Nicol, of Alexandria, Va. (Thos. H. Lion, of Manassas, Va., on the brief), for plaintiff in error.

Ridgely P. Melvin, of Annapolis, Md., and Samuel G. Brent, of Alexandria, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOOD, Circuit Judges.

KNAPP, Circuit Judge. The plaintiff in error, plaintiff below and hereinafter so called, prosecutes this writ of error to reverse a judgment in favor of defendant, entered upon a directed verdict. The facts out of which the litigation arose appear to be these: The plaintiff is the owner of a tract of land in Prince William county, Va.

comprising about 4,200 acres, on which there was a large quantity of pine timber. By contract dated March 31, 1911, but executed on the following day, he sold this timber to the defendant, a manufacturer of wood pulp. The contract of sale contains the following provisions:

"That said first party hereby agrees to sell, and by these presents does sell, to said party of the second part all the pine trees and pine wood the said second party deems suitable for its use, and which will make good, sound, merchantable pulpwood, on all or such portion of the aforesaid tract as said second party finds it will be able to cut and remove within five (5) years from date hereof. Said second party by these presents does hereby purchase the above-mentioned pine trees and pine wood under terms and conditions hereinafter mentioned.

❧     *     *     *     *     *     *     *     *     *

"The party of the second part will advance to the party of the first part on or before the 15th day of each month eighty-five (85) cents per cord for all wood received and piled for seasoning at the railroad station at Quantico during the preceding calendar month, and the party of the second part will pay to the party of the first part on or before the fifteenth day of each month fifteen (15) cents per cord of 160 cubic feet for all wood received at its mills at Lock Haven, Pa., during the preceding calendar month.

*     *     *     *     *     *     *     *     *     *

"The said second party hereby agrees to insert a clause in contracts with its contractors necessitating such contractors to cut reasonably low all the pine trees and pine wood referred to in this agreement, so that no stump shall be over twelve (12) inches high, and furthermore necessitating such contractors to cut all pine trees and pine wood suitable for use of said second party three (3) inches and over in diameter at a distance of five and one-half (5½) feet from the ground.

*     *     *     *     *     *     *     *     *     *

"The said second party hereby agrees to cut clean all the pine trees and pine wood which is suitable for its use as it passes over the said tract, and, unless prevented by the elements or other causes beyond its control, will cut not less than ten thousand (10,000) cords of wood per year, cutting under this contract to begin on or about May 1, 1911.

"It is further understood and agreed that all wood cut under this agreement may, at the option of said second party, be held before loading on cars and shipping to mill until such wood is thoroughly seasoned.

"The said first party hereby agrees to furnish to said second party satisfactory evidence as to the ownership of the said Landsburgh tract being vested in said first party, and to at once procure from the mortgagee mentioned in this agreement a proper release of the pine wood and pine trees to be cut by said second party as hereinbefore mentioned."

It is conceded that defendant did not cut 10,000 cords a year. An official of the company testified that the records of its contractor show:

"That from May, 1911, to May, 1912, they got out and shipped 4,300 cords; that from May, 1912, to May, 1913, they cut and removed about 9,000 cords; and from May, 1913, to May 1, 1914, about 4,000."

At the end of the three years, or a few weeks afterwards, this suit was brought to recover damages, as stated in the bill of particulars: (1) For failure to cut 10,000 cords in each of the years mentioned; (2) for failure to cut reasonably low all pine trees so as to leave no stumps exceeding 12 inches high; (3) for loss in quantity of pulpwood resulting from leaving stumps above the stipulated height; (4) for failure to cut clean as defendant went over the tract all pine trees suitable for pulpwood of the diameter of 3 inches and over 5½ feet from the ground; (5) for 3,000 cords of pulpwood cut and removed,

but not reported; (6) for failure to properly convert into pulpwood all trees that were suitable for that purpose; and (7) for failure to promptly remove all pulpwood that was converted and permitting the same to decay in the woods or otherwise become injured.

At the trial of the case plaintiff gave evidence tending to show, as we will assume without deciding, that he had suffered damage of the various kinds stated, and the amount of such damage. Without reference to other defenses which it claims were sustained by testimony, the defendant insists that it has paid all moneys due under the contract for wood cut and removed, and that as to the other items of damage the suit is prematurely brought and cannot be maintained. This brings up at the outset the question whether the contract gives a right of action, before the expiration of the five years allowed for full performance, for damages resulting from failure to cut 10,000 cords a year. In other words, is this such a separable part of the agreement as furnishes of itself the basis of an independent suit for each recurring failure to cut the stipulated quantity?

To begin with, we are of opinion that this is an executory contract. The subject of purchase and sale is the indefinite and uncertain amount of wood which the vendee might deem suitable for its use and be able to remove within a period of five years. The consideration to be paid was on a stumpage basis, measured by the number of cords actually cut and removed. It was not a sale of standing timber as such for an agreed sum of money, but rather of the uncertain quantity of pulpwood that the tract might yield. The compensation which plaintiff was to receive for the rights conveyed depended upon the results of defendant's future operations, and this we think had the effect of making the agreement executory. Moreover, relatively speaking, the promise to cut the stated number of cords each year was a subordinate part of the contract. The main agreement related to all the suitable wood which defendant might be able to get from the entire tract within five years; the obligation to cut 10,000 cords a year was a related, but minor, feature of the undertaking. The failure to keep it would not affect the aggregate sum to which plaintiff would ultimately be entitled, but merely postpone payment of a portion of the several installments, so to speak, as they accrued from year to year.

Whether failure to cut 10,000 cords a year was such a breach of the contract as would have justified plaintiff in rescinding it altogether, refusing to permit its further performance, and bringing suit for damages occasioned by the breach, we need not consider, because that is not the attitude he has assumed or the basis of his action. On the contrary, he has all along affirmed the contract, accepted the benefits that came to him thereunder, and demanded its full and complete observance. True, he protested because the agreed quantity was not cut in any of the three years named, and because of other alleged violations of the contract; but nevertheless he has taken what money he could get without seeking in any way to rescind the agreement. Granted that he had the right to annul the contract and hold himself no longer bound by it, because of defendant's failure to comply with its terms, he has not seen fit to take that course, but instead has accepted

payment from time to time, in each of the three years, for less quantities of wood than the defendant promised to cut.

The precise question presented is not easy of solution. We have examined all the decisions cited in the briefs of counsel, and many others referred to in standard text-books, without finding a case of sufficient similarity to have more than indirect bearing. But, so far as any guiding principle can be deduced from the multitude of decisions, we think it warrants us in holding, upon the facts here of record, that the contract in suit should be regarded, as respects the point now considered, as a single and indivisible contract, and that the promise to cut a given number of cords a year is not such a separable part of the agreement as affords the basis for an action for damages while the period of complete performance remains unexpired. We are also of opinion that the failure of plaintiff to terminate the contract because of this default, and his acceptance each year of payment for less than the stipulated quantity, operated as a waiver of full compliance with this provision and estops him from recovery for its nonobservance. Without reviewing the authorities or otherwise extending the argument, we content ourselves with this brief statement of our conclusions.

If we are correct in this view of the provision just discussed, it plainly follows that until the five-year period has expired plaintiff cannot maintain an action for damages based upon defendant's failure to cut the pine timber "clean" as it passed over the tract, nor upon the ground that stumps were left more than 12 inches high. It will be observed that these obligations are not limited by any yearly period or other time interval. If plaintiff is right in his contention, it would result, from the facts testified to by him, that he could bring an indefinite number of suits, since he would have an apparent cause of action for every instance in which a tree of the prescribed size was left standing, when any portion of the tract had been passed over, or whenever a stump was left more than 12 inches high. We think it clear that the promises in question are inseparable from the principal agreement, and that as respects these elements of damage the suit must fail because prematurely brought.

The contract provision in respect of payment for wood cut and removed is concededly separable, and that branch of the case remains to be considered. Without reviewing the testimony in detail, we are of opinion that sufficient was shown on behalf of the plaintiff to require submission of the case to the jury upon the question of fact as to whether the defendant had made full payment in accordance with the terms of the contract; and this for two reasons, or upon two grounds. In the first place, the testimony of defendant's officer above-quoted was to the effect, as we understand it, that about 17,300 cords of wood were cut and removed during the three years. But the uncontradicted testimony of plaintiff shows that the aggregate payments were under $14,000. We are unable to find in the record any satisfactory explanation of this discrepancy. As the case is presented to us, it would appear that a substantial balance was due the plaintiff, even on

defendant's theory, and for that reason it seems clear that the verdict in its favor was improperly directed.

In the second place, we are unable to sustain defendant's contention in regard to its obligation to pay for wood actually cut. The principal subject of agreement, as we have termed it, relates to such wood upon the entire tract as the defendant might be able to *cut and remove* within five years, while the subordinate clause merely requires it to *cut* 10,000 cords a year. From this difference in the words used defendant argues that it could cut down as much timber as it pleased without liability for payment, except upon so much of the wood as was removed from the tract and piled up at the railroad station. In other words, it is gravely contended in effect that defendant might have cut all the timber on the tract in say the first six months, and, by leaving it there on the land for the next four years or more, avoided any payment whatever until near the end of the five year period. It is manifest that the contract should not receive such an absurd construction, and we reject it without hesitation. While the contract does not specify when the wood should be removed after cutting, so that the 85 cents a cord would become due and payable, the law will imply that removal was to be made within a reasonable time, and what would be a reasonable time is a question of fact for the jury. Indeed, the obligation to remove promptly, or within a reasonable time, is plainly inferable from the language of the agreement. It provides for the payment of 85 cents a cord on or before the 15th day of each month "for all wood received and piled for seasoning at the railroad station at Quantico during the preceding calendar month." It also provides that all wood cut might, at the defendant's option, "be held before loading on cars and shipping to mill until such wood is thoroughly seasoned." The evident understanding and intention of the parties was that the seasoning was to take place at the station where the wood was to be piled for that purpose, and this obviously implies that the wood was to be taken to the station with reasonable promptness after it was cut, and not permitted to remain indefinitely on the land where the cutting took place. In like manner it must be held that the wood piled up at the station, on which 85 cents a cord would be due on the 15th of the following month, could not be allowed to remain there indefinitely, or for an unreasonable length of time, after seasoning; that is to say, after a reasonable time for seasoning, the defendant was under obligation to transport the wood to Lock Haven and pay thereon the remaining 15 cents per cord provided by the contract.

The plaintiff's testimony showed that considerable quantities of wood had been left for a long time on the tract where it was cut, some of it for two years or more, so that it had become more or less decayed and overgrown with vines, and this testimony was practically undisputed. It is true that the proof was rather indefinite as to the number of cords thus left on the land without timely removal, but we think it was sufficient to require submission to the jury.

This disposition of the fundamental issues of the case renders it unnecessary to consider the assignments of error based upon the rejection of evidence offered by the plaintiff, since such evidence relates

for the most part, if not altogether, to items of damage which cannot be recovered in the present action.

To sum up our conclusions, we hold that the suit is prematurely brought, and cannot be maintained, so far as it is based upon defendant's failure to cut 10,000 cords a year, to cut the timber clean as it passed over the tract, and to leave no stumps more than 12 inches high. But we also hold that plaintiff may recover for all wood actually cut before the suit was commenced and not removed within a reasonable time to the railroad station, and that there was evidence upon this issue which should have been submitted to the jury under proper instructions. It follows that the judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.

WOODS, Circuit Judge. I concur in reversing the judgment and ordering a new trial, but I dissent from the conclusion of the majority of the court that the provision of the contract that the defendant should cut at least 10,000 cords of wood a year was not severable, and that the plaintiff, therefore, had no right of action for its breach until the expiration of the entire period of five years. The defendant's agreement was:

First. To buy all the pine trees and pine wood it deemed suitable to its use which it should be able to cut and remove within five years.

Second. To pay under conditions stipulated $1 a cord for the timber.

Third. To leave no stump over 12 inches high, and to cut all trees suitable to its use 3 or more inches in diameter 5½ feet from the ground.

Fourth. To cut all suitable timber clean as it passed over the tract.

Fifth. To cut not less than 10,000 cords a year, unless prevented by the elements or other causes beyond its control.

I cannot doubt that this last provision was intended by the parties to be severable. The whole tenor of the contract and the situation of the parties show that the intention was that the owner of the land should receive at the end of each year the amount due for the wood which the defendant had agreed to cut during the year. If this is not true, then the purchaser could have waited for the entire period of five years to commence operations, before he would have been subject to any action for the failure to pay the annual installments.

There is no general rule that can be applied in every case to determine whether the different provisions of a contract are severable. The guide is the intention of the parties to be inferred from the contract interpreted in the light of the conditions under which it was made. Faw v. Marsteller, 2 Cranch, 10, 2 L. Ed. 191; 6 Ruling Case Law, Contracts, §§ 246–250; note 59 Am. St. Rep. 279. Looking at the intention of the parties expressed in the contract and their situation when it was made, it seems to me clear that the seller was entitled to recover on that portion of the contract which provided for the cutting of at least 10,000 cords as a severable agreement on the part

of the purchaser. It could not have been contemplated that the purchaser would have a right to withhold the installments that he had agreed to pay at the end of each year until the end of five years. Such a conclusion negatives the expressed terms of the contract, and it seems to me it works a great hardship on the plaintiff.

The acceptance of payment for less than 10,000 cords each year could not be a waiver of the right to demand the yearly installments as they fell due, because the contract provides for payments through the year as the wood was cut, piled and shipped, and the seller could not tell until the end of the year what the deficiency would be. Mere failure to sue promptly for these yearly balances was not a waiver of the right to recover them at any time after they fell due. I cannot resist the conclusion that at the end of each year the purchaser was entitled to recover the purchase price of 10,000 cords of wood, less any wood cut and paid for, and less any quantity which the defendant was prevented from cutting by the elements or other causes beyond its control, and less the actual market value to the plaintiff on the land of the portion of the 10,000 cords which the defendant should have cut and did not.