## HENDRIX v. W. R. ALTMAN LUMBER CO., Inc.

### No. 10890.

Circuit Court of Appeals, Fifth Circuit.

Nov. 14, 1944.

Dunbar Harrison, of Savannah, Ga., and E. K. Overstreet, of Sylvania, Ga., for appellant.

Alexander A. Lawrence, of Savannah, Ga., and J. Henry Howard, of Sylvania, Ga., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

As owner of a tract of land containing 200 acres, more or less, located in Screven

County, Georgia, appellant, as plaintiff in the court below, filed suit against appellee, alleging in substance that he acquired title to said land by deed from Peavy-Welsh Lumber Company, Inc., dated August 18, 1940; that prior thereto, viz.: on April 14, 1936, Peavy-Welsh Lumber Company, Inc., leased the timber on said land to appellee; that, notwithstanding that said lease had expired, appellee was engaged in cutting and removing the timber. The prayer was for a money judgment for the value of the timber cut, and that appellee be enjoined from further cutting said timber.

Following a hearing upon an application for a temporary injunction, the court below denied appellant's prayer for an injunction and, concluding that no claim for relief existed, dismissed the complaint.

Two questions are presented to this court for determination:

1. Did the provision as to minimum annual cutting of timber in the timber contract dated April 14, 1936, and the supplement thereto, between Peavy-Welsh Lumber Company, Inc., and appellee, fix the term and duration of appellee's rights in the timber?

2. If the said timber contract, as supplemented, has terminated, in whom is the title to the timber?

On April 14, 1936, Peavy-Welsh Lumber Company, Inc., agreed to sell to appellee all merchantable timber of certain dimensions on several described tracts in Georgia, including the 200 acres here involved. While no time for removal of the timber was contained in the agreement, it was provided that appellee, except where certain unforeseen events intervened, would cut and pay for a minimum of six million board feet per year, and would begin cutting not later than four months from the date of the contract. It was estimated that there was approximately thirty million feet of timber on the 9,500 acres described in the agreement, but this estimate was not made a part thereof.

On June 23, 1936, a supplemental agreement was entered into between the same parties, by which the timber on another tract, known as the Pierpont Tract, was conveyed to appellee, who contracted to remove the timber therefrom, estimated at ten million feet, prior to January 26, 1939, or, failing to do so, to pay the renewal fee provided in the timber deed under which Peavy-Welsh Lumber Company, Inc., acquired said timber. By the supplemental agreement, appellee agreed to cut and to pay for, under both contracts, a minimum of eight million feet per year, and also agreed in case of default to pay for the amount of timber which fell short of eight million feet per year, or to pay to Peavy-Welsh Lumber Company, Inc., 6% interest for the value of such deficiency. Neither the original nor the supplemental agreement was recorded.

Appellee conducted regular timber operations from 1936 to 1941, but in no year during that period did it cut the minimum requirement of eight million feet under the supplemental agreement, or six million feet under the original agreement. No forfeiture for noncompliance was asserted by the Peavy-Welsh Lumber Company, Inc.; rather, each year it accepted without objection payment for the amount of timber actually cut. By 1942, approximately twenty-six million feet of timber had been cut from the lands described in the original agreement, and it was testified that ten or fifteen years would be a reasonable time for removing all the timber on the various tracts described in the original and supplemental agreements.

On August 18, 1940, Peavy-Welsh Lumber Company, Inc., sold the 200 acres in question to appellant for $800. Appellant testified that he was not interested in the timber; that the $4 per acre paid by him represented the value of the land without the timber; and that he merely acquired the land to connect up tracts which he owned on each side of the 200 acres. It is estimated that there was between seven hundred thousand and one million board feet of timber on the 200 acres at the time appellant acquired the bare land.

The deed to appellant contained this provision: "Timber on the land herein conveyed has been sold by first party to W. R. Altman Lumber Company, and this deed is made subject to the timber lease from first party to W. R. Altman Lumber Company, dated April 14, 1936, and the timber on said land is hereby reserved in accordance with the terms and conditions of said lease."

Appellant in acquiring the land had no knowledge of the supplemental agreement and did not examine or inquire into the contents of the timber lease from his vendor to W. R. Altman Lumber Company, dated April 14, 1936.

On October 14, 1942, Peavy-Welsh Lumber Company, Inc., for a consideration of

$25,120, sold to appellee all of the timber owned by it on the lands described in the agreement of April 14, 1936, including the timber on the 200 acres. Prior to this contract, appellant had never intimated, suggested, or claimed that he had any interest in the timber on the 200-acre tract, but had tried to purchase from appellee the timber in question several months after he acquired title to the land. Appellee commenced to cut the timber on the 200 acres in October, 1943, and shortly after, appellant brought the present action.

We agree with the court below that the agreement to cut a minimum of six million feet of timber each year under the original contract entered into between Peavy-Welsh Lumber Company, Inc., and the appellee, or a minimum of eight million feet of timber under the supplemental agreement of date June 23, 1936, between the same parties, constituted a mere personal covenant and did not, as appellant contends, operate to fix the duration of appellee's right to cut the timber. No specific time was fixed in the agreement of April 14, 1936, within which the timber should be cut and removed; nor is there a forfeiture clause in said agreement for failure to cut and pay for the minimum feet per year; and the evidence makes it clear that neither Peavy-Welsh Lumber Company, Inc., nor the appellee ever treated the minimum cutting stipulation as a termination clause or gave it any effect whatsoever. If they had intended that appellee's rights should terminate at a given date, nothing would have been simpler than to have said so, as was done with reference to the removal of the timber on the Pierpont Tract.

We agree with appellee that "there is not the slightest evidence, in pais or of record, to support the contention that the estimated footage, as shown by a former cruise,[1] was a factor in fixing the contractual time for the expiration of the right of Altman Lumber Company, Inc., to cut the timber. A certain rate of cutting per year connotes board feet, not days or months or years. The minimum footage agreement cannot measure the life of the contract in terms of the absolute since the actual amount of timber cut annually is a variable."

Even if appellant's theory as to measuring the tenure under the timber lease were adopted, acceptance by Peavy-Welsh Lumber Company, Inc., over a period in excess of four years, of a smaller amount than the minimum cut in any year, necessarily would have extended appellee's rights well beyond five years, since the actual amount cut would be substituted for the contractual requirement in each year that there was such a shortage. By accepting, without objection, payment each year for a lesser quantity of feet than the minimum stipulated in the contract, Peavy-Welsh Lumber Company, Inc., waived the successive breaches of the minimum-cutting stipulation. Cf. Hutchison v. New York & Pennsylvania Co., 4 Cir., 229 F. 510. By such acceptance, Peavy-Welsh Lumber Company, Inc., also waived any right of forfeiture for failure to cut the timber on time.[2] Hence, when appellant purchased the land subject to appellee's timber contract, any right or reversionary interest in the timber he might thereby have acquired was subordinated to the waiver by the Peavey-Welsh Lumber Company, Inc., of the minimum cutting requirement, and the ensuing loss of the right to declare forfeiture in 1941.

Appellant stood with reference to appellee's timber right in no better position than his grantor,[3] the true rule being that a purchaser, having knowledge such as would lead a reasonable man to make inquiries which would disclose facts sufficient to bar the rights of his grantor, is himself barred. 31 C.J.S., Estoppel, § 133; Code of Georgia, Sec. 37-116. "A purchaser is bound to exercise due diligence in the prosecution of all inquiries that may be suggested by any fact brought to his knowledge, and in the discharge of such duty must make inquiries in pais as well as examine the records." Dyal v. McLean, 188 Ga. 229, 231, 3 S.E.2d 571, 573. This appellant was informed by the reservation in his deed of the existence of a contract for the removal of timber from said land, and he was chargeable with notice of the terms of such contract.

Appellant purchased the 200 acres for $800, $4 per acre, which represented the value of the land only. The timber on

---

[1] This was made prior to the agreement of April 14, 1936.

[2] Gray Lumber Company v. Harris, 8 Ga.App. 70, 68 S.E. 749; Morgan v. Perkins, 94 Ga. 353, 21 S.E. 574; 38 C.J.

p. 178, Sec. 62; Powell on Actions for Land, p. 536, Sec. 404.

[3] Kidder v. Flanders, 73 N.H. 345, 61 A. 675.

the land at the time of the purchase had a value of from $10,000 to $15,000. To effect a forfeiture, which the law does not favor, the evidence must be clear and convincing and must not call upon a court of equity to do an inequitable thing.

We agree with the court below that appellee had a reasonable time within which to remove the timber from the various tracts covered by the 1936 contracts, and that said reasonable time has not expired. So agreeing, the second question becomes moot.

The judgment appealed from is affirmed.