## ALSTON v. PHENIX INSURANCE COMPANY.

1. Where a policy of fire insurance covering personal property was issued to a partnership, the fact that one member thereof subsequently executed and delivered to another member a mortgage on such property did not constitute such an incumbrance as was contemplated by a stipulation in the policy to the effect that it should be void "if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

2. An insurance company which receives in due time papers submitted to it in good faith as proofs of loss, should within a reasonable time, if the same are unsatisfactory, direct the attention of the party presenting such papers to any defects which it claims exist therein; and where a company, without doing this or pointing out the alleged defects, retains the papers so submitted until they are, under a notice to produce, brought into court by it on the trial of an action upon the policy, the company will be held to have waived any objection to the sufficiency of such papers as proper proofs of loss.*

3. In view of the entire evidence contained in the record of the present case, it was error to grant a nonsuit, but the various issues involved should have been submitted to a jury.

Argued at the last term. Reargued January 28,—Decided February 15, 1897.

Action on insurance policy. Before Judge Gober. Cobb superior court. November term, 1895.

*J. Z. Foster, C. D. Phillips* and *E. Faw*, for plaintiff.
*Glenn, Slaton & Phillips* and *Clay & Blair*, for defendant.

SIMMONS, Chief Justice.

From the record it appears, that in January, 1894, William Alston & Sons, a partnership, applied for and obtained from the Phenix Insurance Company a policy of insurance upon their stock of goods, and on April 2, 1894, T. P. Alston, one of the sons, executed and delivered to his father, William Alston, senior partner, a mortgage on the entire stock of goods insured. This mortgage was recorded in the clerk's office on the 6th day of April in the same year, and on the 23d of the same month and year it was cancelled on the records in the clerk's office. On May 1st or 2d, 1894, the firm was dissolved, the father and the younger son retiring and leaving T. P. Alston, the present plaintiff in error, the surviving member, and to him with the consent of the company they, on May 8th, transferred their interest in the policy of insurance. In the following July the fire occurred by which the goods were greatly injured or destroyed. The insurance company refused to pay the loss, and Alston brought his action against it to recover the same. After the close of the plaintiff's evidence the defendant moved for nonsuit, upon the ground that the plaintiff had "violated the contract of insurance, in that he had given a mortgage on the property alleged to have been injured"; and upon the further ground that he had "violated the contract of insurance, in that he did not furnish an itemized and specific statement of loss to defendant company in compliance with said policy of insurance." This motion was granted by the trial judge, and plaintiff excepted.

1. The policy of insurance contained many conditions which, if violated by the insured, rendered the policy void. Among these conditions was the following: "If the subject of insurance be personal property and be or become incumbered by a chattel mortgage." This is a reasonable requirement in a policy of fire insurance, and when the insured accepts a policy with this condition in it and commits a breach of the condition, he should not be allowed to recover in

case the property is destroyed by fire. As far as we can ascertain this seems to be the universal holding of the courts, both Federal and State. The making and delivering of a mortgage upon insured property is regarded as a "moral hazard"; it tends to lessen the interest of the mortgagor in the safety and preservation of the property. When a person insures property which is incumbered or which he afterwards incumbers, "there will sometimes exist a dangerous temptation to withhold protection to such a degree as to invite accident, and this may frequently be done without a conscious intent of wrong-doing on the part of the insured. This fact is always recognized by insurance companies; and as the success of their undertakings is not based on the exceptional, but the general, principles of business morality, their purpose is to fix relations under the contract that will create no motive on the part of the insured for the commission of crime." Ostrander on Fire Insurance, §84. The main object seems to be not to permit the insured to do an act without the consent of the insurer, which will tend to increase the hazard or risk by lessening the interest of the insured in the preservation of the property. These being the reasons, or some of them, for the condition in this policy, does the fact that one partner gave a mortgage to another partner upon the goods insured render this policy void? Each partner has a general interest in all the partnership assets, and this interest is undivided. When, therefore, one partner gives to another a mortgage on the whole of the property of the partnership, his interest is not lessened for its safety and preservation, and it is as much his interest to preserve it from accident or destruction as if he had not given the mortgage. The interest of the other partner, the mortgagee, is not lessened or increased in the partnership property by his receiving the mortgage. Both partners have the same interest in the protection and preservation of the property. The reason for the rule not applying, the rule itself should not be followed. It will be seen on an ex-

amination of the mortgage that the mortgagor did not incumber his undivided interest in the partnership property, but gave a mortgage upon the whole of it, which not only included the interest of the mortgagor but also that of the third partner. One partner certainly can not give a valid mortgage upon the whole property of the partnership to secure his individual debt, without at least obtaining the consent of all the partners. We therefore think that this was not such a mortgage as was contemplated by the parties at the time this policy was issued, or that it was such a mortgage as was contemplated even by the company when it inserted this clause in the policy. The mortgage contemplated by this clause in the policy was, in our opinion, a mortgage by the partnership, or perhaps a mortgage by one partner with the consent of the others to a stranger, to a mortgagee who has no interest in the partnership assets. When this is done, the reason and the rule apply.

While we have been unable to find any decided case arising under this clause of the policy where one partner gave a mortgage to another upon the partnership property, we have found many cases upon the clause in the policy forbidding alienation. These cases hold that the sale of his interest by one partner to another does not vitiate the policy. The principle applied in these cases in regard to the sale by one partner to another is, in our opinion, applicable to a mortgage by one partner to another, if the mortgage should be treated as valid and binding between the parties. Upon the subject of alienation between partners, see 1 May on Insurance, §279, and the cases there cited. We have examined most of the cases cited, and they fully sustain the text.

2. The record discloses that after the fire Alston, the insured, endeavored to comply with the requirements of the policy in regard to the proof of loss. He gave the notice of the fire and loss, and within less than thirty days after the fire he made out a schedule of the goods which he claimed had been destroyed or injured, with the cash value of each

class of goods opposite thereto. The schedule did not contain the quantity and cash value of each item of the stock and the amount of loss thereon, as required in the policy, but gave the names of the articles injured or destroyed with their values, thus: "Sugar $25.00, loaf sugar $7.00, brown sugar $10.00," "Dried fruits $17.00," "Chewing tobacco $101.00," etc. He also furnished an inventory of the goods, which had been made out in compliance with the terms of the policy. These papers were forwarded to the company. The company received them and kept them until the trial of the case, when it produced them under notice served upon it by the plaintiff. The correspondence between the plaintiff and the agents of the company shows that the former was willing and anxious to comply with the terms of the policy, that he acted in entire good faith in endeavoring to comply therewith. It shows that he wrote several letters to the company or its agents, complaining of the delay in settling his loss, and proposing, if he had not fully complied with all the requirements of the policy, to do so if the agent would point out the deficiency or defect in the papers. Neither the company nor its agents did this. They simply referred him to the policy, informing him that they neither admitted nor denied liability but referred him to the counsel of the company.

While we think that the insured did not fully comply with the requirements of the policy in making out his schedule, yet we do think the record shows that he made a bona fide attempt, that is, a fair effort to do so; and we think under the facts of this case that the insurance company, after receiving this attempted proof of loss, if it was unsatisfactory, should have returned it to the insured within a reasonable time, pointing out the defects and deficiencies therein, so that he might have had an opportunity of correcting or supplying them. Good faith on its part and a desire for fair dealing toward the insured demanded this of the company, even though it had a good defense upon the

real merits of the case. Instead of doing this the company kept the papers until forced to produce them in court, without ever giving the insured any notice of any defect in the proof of loss more than to refer him to the terms of the policy. We therefore think the company should be held to have waived the sufficiency of the proof of loss.

. 3. In view of the entire record in the case now before us, it was error to grant a nonsuit.

*Judgment reversed. All concurring, except Fish, J., not presiding.*