## 22582.  ÆTNA INSURANCE COMPANY OF HARTFORD v. MOSELY.

DECIDED MAY 13, 1933.

*Smith, Hammond, Smith & Bloodworth, William Butt,* for plaintiff in error.

*Thomas H. Crawford, Morris & Welsch,* contra.

GUERRY, J.   The action was on a fire-insurance policy covering a certain dwelling house in the sum of $2000, and household goods in the sum of $1000, alleged to have been destroyed by fire.   The policy contained what is known as a loss-payable clause or rider, in favor of A. C. Ingle as his interest might appear.   Inventories showing the cost of the building and of the household goods destroyed were attached as exhibits.   Petitioner further alleged that he furnished to the general adjuster of the company, John F. Hallman, who was investigating the fire and undertaking in behalf of the company to adjust the loss, a detailed proof of loss not sworn to, and that said John F. Hallman stated to petitioner that the papers petitioner was furnishing were sufficient proof of loss and would be accepted as such; that said papers were received by defendant company and produced in court under notice to produce, without any objection or claim of defect existing therein, and without pointing out any alleged defect, and that they had been retained by the defendant until they had been produced under the notice to

produce; that plaintiff had in good faith served defendant with proofs of loss, and the defendant had stated that the proofs submitted were sufficient and made no objection to the same. It was alleged further that the adjuster promised to plaintiff, at the time of the receiving of the papers referred to, that the company would pay the claim, and that this conduct on the part of the company amounted to a waiver.

Defendant, answering, said that John F. Hallman, acting as adjuster for defendant in the matter of the plaintiff's alleged loss by fire during the existence of the policy, entered into a non-waiver agreement in writing with plaintiff prior to any conversation or investigation, which agreement stated that the plaintiff and the company agree that any action taken by the company in the investigation of the cause of this fire, or in investigating and ascertaining the amount of the loss or damage to the property of the plaintiff caused by such fire, shall not waive or invalidate any of the conditions of such policy, and shall not waive or invalidate any of the rights of the parties hereto, but preserves all rights; that such an agreement made any action of John F. Hallman ineffective so far as the binding effect on the company was concerned, and that no notice made or given to John F. Hallman obligated or bound the company. The defense in effect was, that, the policy itself having provided that the entire policy should be void if the interest of the insured was other than unconditional and sole ownership or if the building was on ground not owned by the insured in fee simple, and that, the title to the land having been shown to be in Ingle under a deed to secure debt, the rider clause, to wit, "Any loss that may be ascertained and proven to be due the assured under the building items of this policy shall be payable to A. C. Ingle as interest may appear, subject, nevertheless, to all the terms and conditions of this policy," was ineffective as a waiver. The other defense was that sworn itemized proofs of loss had not been tendered as provided for in the policy, and, under the non-waiver agreement made after the fire, John F. Hallman, the company's adjuster, was without authority to waive any of the terms and conditions of the policy, and that the plaintiff had not fully complied therewith.

The foregoing, briefly stated, covers the salient features of the case. Upon the trial a verdict was rendered in favor of the plain-

tiff. The defendant excepts to the overruling of its motion for a new trial. .

It is earnestly contended by able counsel for the plaintiff in error that although the policy itself contained the notice of the claim or interest of A. C. Ingle and made the same payable to him as his interest might appear, yet in view of the fact that A. C. Ingle's claim was represented by a note secured by a security deed to the property, such a notice did not put it on notice of the kind of claim held by Ingle, and, the testimony not having disclosed what the representations were that were made to the agent of the company at the time of the issuance of the policy, and it being shown by security deed that the sole ownership was not in the insured, the policy was voided. In the case of Peerless Mineral Springs Company v. German American Insurance Company of New York, 151 Wis. 352 (138 N. W. 1023), it was said: "When the defendant executed this policy making the loss, if any, payable to D. S. Roberts, trustee, as his interest might appear, it contracted with the insured for the benefit of Roberts as trustee to that extent. It can not be heard to say, after making such an indorsement on its policy, that it did not know he was trustee, and it must at its peril ascertain the nature and character of his trust. It would be a strange sort of commercial morality which would justify one in contracting with another to pay what might become due on the contract to a third person as trustee as his interest might appear, and then defeat the obligation of the contract upon proof that such third person was a trustee." The Supreme Court of this State in the case of *Hartford Fire Insurance Co.* v. *Liddell Co.,* 130 *Ga.* 8 (60 S. E. 104, 14 L. R. A. (N. S.) 168, 124 Am. St. R. 157), said: "The words 'as his interest may appear' only serve to limit the appointee's recovery. If his interest be less than the amount due on the policy, he could not recover from the insurer, over the insured's objection, the excess of his debt. *These words will estop the insurance company from insisting that the exact nature or amount of the appointees interest was not stated in its assent* [italics ours], but can not be enlarged into a consent to a subsequent *mortgage.* [Italics ours.] A loss-payable clause of this nature only means that the insurer has notice that the person to whom payment is to be made in the event of loss has some *interest in the property* [italics ours], and, to the extent of that interest as then existing, agrees to pay to

such person out of its liability on the policy." In the case of Sun Insurance Office *v.* Scott, 284 U. S. 177 (52 Sup. Ct. 72, 76 L. ed. 229), it was said: "A loss-payable clause attached to a policy of fire insurance, providing that any loss that may be proved due the assured shall be payable to the assured and a named bank, does not imply knowledge on the part of the insurer of the existence of a chattel mortgage on the insured property, nor does it constitute a waiver of a condition in the policy against mortgaging or a consent to a mortgage." It will be noticed from the language of the two clauses that there is an entire dissimilarity. In the case at bar it will be noted that the policy of insurance covers a house in the sum of two thousand dollars and household goods in the sum of one thousand dollars. The loss-payable clause is payable to A. C. Ingle out of any loss due the assured under the *building items* of this policy, and is payable *to A. C. Ingle as his interest may appear*. In the Sun Insurance case, cited above, the loss is payable to the assured and a named bank, and, so far as might be inferred therefrom, such named bank was a naked trustee without interest. The court in discussing that case said: "This transaction is a very common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, his skill and success in trading, but who requires indemnity against such accident as loss by fire. . . In the face of this frequent use of the two indorsements on the policy, it can not be held that they imply of themselves a knowledge of the sale or a consent to insure the purchaser."

It will be noted in the instant case that the insurer was put on notice that A. C. Ingle had an interest in the building for the reason that the loss-payable clause is limited to the building items and is not an assignment as to the household goods covered by the policy. The object of all such provisions inserted in insurance policies is to protect the insurer against any fraud that may be practiced upon it. This intention and purpose must be kept in mind in construing and interpreting such provisions of a policy. The law does not indulge in quibbling. We are not like Hamlet in the grave-digger scene, who was required "to speak by the card or equivocation will undo me." The spirit, purpose, and intent of an instrument must be looked into rather than its failure to specifically name every condition and emergency that might arise thereunder. The loss-

payable clause does not make the policy operative as to mortgages or deeds or other liens placed on the property in favor of other parties not named therein, or subsequent deed or mortgage not a renewal to the same parties, but it is broad enough and clear enough to include therein every claim of such named payee, irrespective of its character, made at the time or prior to issuance of policy and rider. The insurer can not say it has been defrauded or misled or its risk increased, when notice is given to it of the interest of another in the property insured and it has issued the policy and named such a person as a beneficiary thereunder. If it desired to know more fully what was the character of the claim held, the duty rested on it to make inquiry. "It has been held in some cases that the company is estopped if the facts are such as it ought to have known or could have readily ascertained." National Union Fire Ins. Co. v. Burkholder, 116 Va. 942 (83 S. E. 404). If it fails to do so, it may not complain of its own negligence and void its solemn contract entered into in the utmost good faith by the insured. The court did not err in giving this principle in charge to the jury on this proposition.

The next objection, as to there being no proper proofs of loss submitted and the question whether or not there was a waiver thereof by one with authority to make such waiver, presents a more difficult proposition. It is insisted that by the signing of a subsequent "non-waiver agreement," the insured was put on notice of the limitations of the adjuster's authority, and that such waiver, signed after the loss had occurred, expressly put into effect the provisions of the policy with reference to proof of loss, etc., and that it takes the agreement out of the decision of the Supreme Court in the case of *Corporation of the Royal Exchange Assurance* v. *Franklin,* 158 *Ga.* 644, 654 (124 S. E. 172, 38 A. L. R. 626), which is as follows: "Clauses in insurance policies which prohibit waivers unless endorsed thereon, refer only to the provisions which enter into the contract of insurance, and do not affect conditions which are to be performed after loss, such as furnishing proofs of loss and giving notice," and the further ruling in said case (3-b) that "An adjuster sent to adjust a loss presumably has authority to waive proof of loss." Does the so-called non-waiver agreement add to the policy or take away from the insured an existing right, and if it does, is there any consideration therefor,

and does the acceptance of these alleged proofs of loss without objection on the part of the company itself amount to a waiver as to any defects therein? These papers constituting the alleged proofs of loss were produced by the company at the trial under notice to produce. In the case of *Goldman* v. *Ætna Ins. Co.*, 30 *Ga. App.* 715 (119 S. E. 338), it was said: "An insurance company which receives in due time papers submitted to it *in good faith as proofs of loss*, should within a reasonable time, if the same are unsatisfactory, direct the attention of the party presenting such papers to any defects which it claims exists therein; and where a company, without doing this or pointing out the alleged defects, retains the papers so submitted until they are, under a notice to produce, brought into court by it on trial of an action upon the policy, the company will be held to have waived any objection to the sufficiency of such papers as proper proofs of loss." (Italics ours.) See also *Alston* v. *Phenix Ins. Co.*, 100 *Ga.* 287 (2) (27 S. E. 981).

In the instant case these lists were made out by the plaintiff partly in collaboration with and at the suggestion of the adjuster, and were accepted by him at the time as being all right, and were evidently delivered by him to the company as they were produced by the company at the trial. The evidence, if not the writing, discloses their authorship, and differentiates this case from that of *Newark Fire Ins. Co.* v. *Reese*, 32 *Ga. App.* 42 (123 S. E. 41).

With reference to the non-waiver agreement adding to the terms of the policy, it is well to call to mind the case of Wilms *v.* New Hampshire Fire Ins. Co., 194 Mich. 656 (161 N. W. 940), where it was said that where blanks for proof of loss furnished by a fire-insurance company recited "It is expressly understood and agreed that the furnishing of this blank to the assured and the preparing of proofs by an adjuster or any agent of the company herein, is not a waiver of any right of said company," this recital was not notice to the insured of the curtailment of the general powers of an adjuster to agree to the amount of the loss. In the case of Gristock *v.* Royal Ins. Co., 84 Mich. 161 (47 N. W. 549), where an adjuster of the company spent several days with the assured's son and agent in making a list of the personalty destroyed, and the two employed a builder to estimate the value of certain buildings, etc., it was held that if the adjuster's conduct would induce an honest belief that the proofs then being made were all the company required, and the

insured did so believe, the jury might find that the formal proofs were waived. See also *Stanley* v. *Sterling Mut. Life Ins. Co.*, 12 *Ga. App.* 475 (77 S. E. 664). In *Merchants Ins. Co.* v. *Vining,* 67 *Ga.* 661 (5), it was held that "If proofs of loss be made to a general adjuster of a foreign insurance company who is engaged in the adjustment of this particular loss, it is sufficient, without also making such proofs to the home office."

In the case at bar the evidence showed that proofs were submitted although in themselves they were defective and did not fully comply with the terms of the policy. However, the evidence for the plaintiff discloses that the adjuster accepted them with the statement that they were sufficient and that the claim would be paid. The evidence shows that they were in the possession of the company, having been delivered to it by the adjuster, and that no complaint was made as to their sufficiency. The charge of the court fully and fairly covered the entire matter, and was an unusually clear charge on the subject. The entire question presented by the plaintiff in error hinges on the construction to be placed on the "non-waiver agreement" after the fire had occurred. Other States have had this clause up for construction. The case of Ins. Co. of North America v. Williams, 200 Ala. 681 (77 So. 159), seems to be authority for the position taken by the insurance company in this case. The other cases cited in brief of counsel for plaintiff in error are not in point except by implication. On the other hand, there are numerous authorities for the position that the so-called non-waiver agreement signed after the loss occurred would be inoperative under the allegations and the facts as found by the jury in the present case. The case most directly in point is that of McCollough v. Home Ins. Co., 155 Cal. 659 (102 Pac. 814, 18 Ann. Cas. 864), which is as follows: "The appellant relies upon a 'non-waiver agreement' signed by McCollough [the insured] during the pendency of his negotiations with Laying [the adjuster for the company]. This paper provided that 'Any action taken by said party of the second part [the insurance company] in investigating the cause of the fire or in investigating and ascertaining the amount of the loss and damage . . shall not waive or invalidate any of the conditions of this policy.' This agreement has no reference to affirmative representations calculated to lead the insured into belief that written proofs would not be required. A statement that such proofs were

not necessary is no part of the action taken by the Company 'in investigating the fire and ascertaining the amount of loss.' Laying stated at the time that the proofs ought to be in writing and sworn to, but it was not necessary. He said it did not make any difference, he would go ahead and settle just the same. Plaintiff testified that he made no formal proofs because of these representations by Laying." See also, in this connection, Wilms v. New Hampshire Fire Ins. Co., supra; Teasdale v. City of N. Y. Ins. Co., 163 Iowa 596 (145 N. W. 284, Ann. Cas. 1916A, 591); Gristock v. Royal Ins. Co., supra; Carroll v. Girard Ins. Co., 72 Cal. 297 (13 Pac. 863); Arnold v. American Ins. Co., 148 Cal. 660 (84 Pac. 182, 25 L. R. A. (N. S.) 6); Blake v. Exchange Mut. Ins. Co., 12 Gray (Mass.), 265.

The plaintiff in the case at bar testified: "Mr. Hallman, the adjuster, told me what I had to do, get up a list of the stuff in the house that was destroyed, and a bill of material in the house. I had an itemized list of the household goods already, and I served him with that. I told him I was of limited education and it would take some time to get list of material but would do it, and I did and furnished both lists to him and he accepted it and he has never returned it to me. I was trying to furnish him that document as proof of loss. The company never called on me to make any additional detailed statement after I had furnished the adjuster with that list. The next morning after Mr. Hallman came I had the additional list of material, and when I handed it to him he said it was all right, he would accept that. He said his company would pay it as soon as it went in. I never received any notice from the company to correct anything, and never heard another word from them. Mr. Hallman told me the company would pay me off as soon as his report went in. This was on the second morning he was there."

It is an elementary principle of the law relating to insurance that no officer, agent, or representative of the company shall have power to waive any condition of the policy except such as may be endorsed thereon or added thereto. But such a principle, under the decisions of the Georgia courts, does not apply to conditions which are to be performed after the loss has occurred, such as the giving of notice and the making of proofs of loss. Our courts have expressly held that an adjuster sent out by the company has the authority to waive proof of loss. The tendency of the courts has been, and

rightly so, to strictly construe against the insurer any provisions in a policy attempting to place penalties or forfeitures for the non-performance of a requirement, and to broaden by implication any rights that are not necessary features to the contract but have been placed therein as traps for the unwary.

If a policy is written undertaking to pay in the event of a loss by fire, the law does and ought to see that there is thrown around the insurer every safeguard that shall protect him in every particular that smacks in the faintest degree of fraud or unfair dealing or overreaching. It does have and should have the same concern in seeing that the insured is protected in the fundamental purpose for which the contract was written, the payment for the loss occurring by reason of a bona fide fire.

In case various conditions are appended to the contract providing, for instance, a time limit for the making of proofs of loss, and then providing that a failure to make proof within such time voids the policy, Georgia courts have construed that an omnibus provision at the end of the policy, providing in general terms that any failure on the part of the insured to comply with any of these terms should render the policy void, does not make void the policy if proofs are filed after the sixty days. It being a forfeiture and not being favored by law, it must be expressly stated in the same paragraph fixing the duty to file proof in sixty days or it will not be enforced.

The company may rightfully require written proofs of loss to protect itself against fraud. However, the damage by fire, and not formal proof, is the essence of the contract, and small circumstances may be sufficient to show that the company has waived such non-essential though legal parts of its contract of insurance. The courts infer waivers of such nonessential parts by conduct for the reason that they are in the nature of penalties and are not favored under the law. They are brothers by adoption and not by blood.

It is permissible and proper that an insurance company shall require that notice within a reasonable time shall be given to it of any loss that may occur, and that it may be furnished with any details necessary for a proper ascertainment of the cause of the fire and the amount and character of the property destroyed. This being true, why should an insurance company, after notice of the fire, and after sending an adjuster to the scene for the purpose of investigating the fire, and after accepting from the insured a written

list of the articles destroyed, and then, without even suggesting by plea or attempting by evidence to question the fact that the loss occasioned and the damage done was other than such loss or damage that the policy was issued to protect, and without making demand on the insured for any other information, fail and refuse to pay the claim. The only reason assigned for the refusal to pay is that the proofs of loss submitted did not come up to the requirements of the policy, and that by a non-waiver agreement signed subsequent to the fire the insured promised to comply fully with the necessary formal proofs of loss. The spirit of the contract was fully complied with. The utmost good faith was shown by the insured. He testified, and the evidence disclosed that he was an unlettered and unlearned man. He further testified that the adjuster told him that the proofs submitted by him were all right, and that the claim would be paid. If the company had desired to insist that it have the full, formal proofs of loss, and that it would not pay the claim without such proofs being furnished, the non-waiver agreement should have said so in specific terms; and it is contrary to our conception of good faith and justice for the company to attempt to claim that such failure defeated the right of the insured to recover. The spirit of the contract has been fully performed. The courts will lend full aid to see that representations and warranties made as an inducement for the making of the contract are true and carried out to the letter. They are the breath of its life. When a loss has occurred, and the insurance company sends an adjuster to the scene, and no fraud or wrong-dealing is suggested, the courts, seeing the spirit of the contract is fully complied with, will not enforce subsequent terms which are in the nature of penalties, but will give full effect to any evidence which tends in any manner to show a waiver thereof. To contend, under the facts as shown by the plaintiff in this case, that formal proofs of loss had not been furnished is but a mummery. It is as useless as the old theological discussion as to how many angels could dance on the point of a needle. The right to recover for a loss by fire on a policy of insurance is not dependent upon, nor will the law see it defeated by, failure to perform conditions subsequent, where there is evidence to show that there has been a waiver of such conditions subsequent, and where it further shows that the failure to perform could work no possible harm to the insurer, and that such conditions are, in effect, a trap

for the ignorant, the unlettered, and the unwary. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. I can not agree with my colleagues that the loss-payable clause attached to the policy of insurance was constructive notice to the insurance company that the insured did not have the legal title to the property insured. It clearly appears from the principle of the decision of the Supreme Court of the United States in Sun Ins. Office *v.* Scott, 284 U. S. 177 (52 Sup. Ct. 72, 76 L. ed. 229), that such a clause attached to the policy was not constructive notice to the insurer that the insured was not the sole and unconditional owner of the property insured. Under the provisions of the policy in the instant case, and the undisputed evidence (disclosing that the legal title to the property insured was not in the insured when the policy was issued), and no waiver of the provisions of the policy appearing, the plaintiff was not entitled to recover, and the court erred in refusing to grant a new trial. *Security Ins. Co.* v. *Jackson,* 43 *Ga. App.* 13 (158 S. E. 457); *Northwestern National Ins. Co.* v. *Southern States &c. Co.,* 20 *Ga. App.* 506 (93 S. E. 157); *Southern States Fire &c. Co.* v. *Napier,* 22 *Ga. App.* 361 (96 S. E. 15).