### 23920. SENTINEL FIRE INSURANCE COMPANY *v.* McROBERTS *et al.*

DECIDED NOVEMBER 24, 1934.
ADHERED TO ON REHEARING, MARCH 1, 1935.

*Smith, Smith & Bloodworth, Gordon Knox,* for plaintiff in error. *Chastain & Henson,* contra.

JENKINS, P. J. Ida and S. W. McRoberts sued Sentinel Fire Insurance Company for $750, the face amount of a fire-insurance policy on a dwelling, and for interest, a penalty, and attorney's fees. The jury returned a verdict in favor of the plaintiffs for $750 principal, $48.07 interest, $187.50 penalty, and $100 attorney's fees. The insurance company excepted on general and special grounds to the denial of its motion for new trial. It contends that the

insured failed to furnish to the company a signed and sworn proof of loss within sixty days after the fire, as required by the policy, or at any time thereafter; that the company is not liable for interest on an unliquidated claim; and that the company is not liable, because of any bad faith, for the penalty and attorney's fees. The policy provided that the amount of loss "shall be payable sixty days after notice . . and satisfactory proof of the loss have been received by this company in accordance with the terms of the policy;" that "within sixty days after the fire, unless such time is extended in writing by the company, [the insured] shall render a statement to the company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon . . ;" and that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire." With regard to notice and proof of loss, the petition pleaded: "that the defendant had due notice of said loss, according to the terms and requirements of said insurance policy; that . . the agent of the defendant company living in Hazlehurst, Georgia, was notified immediately after the destruction of said dwelling house by fire; and that through the said . . agent as aforesaid, and other sources, Mr. Frank West, acting with and for the Otis A. Murphy Company Inc., an adjusting agency for losses under insurance policies and an adjusting agent in this instant for this particular loss, representing the said defendant company, soon after the said loss, and within sixty days from said loss and damage by fire as herein designated, came, and in company with the said . . agent of the said defendant, and in company with the other parties, visited the site of the dwelling house, and there stated that the loss was an honest loss and the building was not over-insured, and that settlement would be promptly made by the said defendant for said loss; thus waiving any further notice, and agreeing to an early adjustment. Petitioners gave no further notice in writing of the extent and amount of the loss, but relied upon the inspection of the loss and premises by said adjusting agency and the promise of an early adjustment as sufficient notice

of said loss." The answer denied these averments. The evidence was undisputed that the loss was total. There was testimony from one of the mortgagees, who had an interest in the insurance under a loss-payable clause, that the company's adjuster had made to him, two or three days after the fire, which occurred on July 29, 1932, a statement substantially as alleged in the petition, that "there would be no delay in the settlement," and "all he wanted to do was to get the insured to sign the proper papers and settlement would be promptly made." The local agent of the company testified that the adjuster had stated that "the transaction was complete except getting the insured's signature." There was also testimony to the effect that the mortgagee to whom the statements of the adjuster were made was at that time the authorized agent of the insured, and that the insured relied on these statements.

No witness testified for the company in denial of the alleged statements made by the adjuster. Only certain correspondence was introduced. On December 10, 1932, the plaintiffs' attorneys wrote to the company the following letter:

"We hold fire insurance policy No. 1207, issued by your company in favor of Ida and S. W. McRoberts, insuring a dwelling house at Graham, Appling County, Georgia, for $750. This dwelling was totally destroyed by fire on the 29th day of July last. Soon after the house was burned, the adjuster representing your company made investigation of the loss, estimated the value, etc., of the building, and states that his investigation showed that it was an honest fire, and payment would be promptly made; that the insurance was not excessive. The insured have patiently waited for settlement and the matter is still delayed with no definite assurance as to when payment will be made. The law fixes the time [in] which settlement must be made in cases like this at issue. This time has already elapsed, and this is to notify you that unless payment is promptly made to us for the amount of this policy, we will file suit immediately upon this policy now in our possession, and will also include penalty and attorney's fees as fixed by law. We hope this will not be necessary, and that you will promptly make settlement; otherwise, suit will be filed in a few days," etc.

On December 22, 1932, the adjuster wrote to the plaintiffs' attorneys the following letter:

"The company has sent us copy of your letter of December 10th

with reference to claim of Ida and S. W. McRoberts. We note that you state in part: 'Soon after the house was burned, the adjuster representing your company made investigation of the loss, estimated the value, etc., of the building, and stated that his investigation showed that it was an honest fire, and payment should be promptly made; that the insurance was not excessive.' This adjuster begs to say that the statements alleged to have been made by us as quoted above are incorrect. We were not able to get in touch with the assured at the time of our visit and, therefore, could express no opinion as to the origin of the loss, and, furthermore, we made no estimate as to the loss and damage.

"We draw your attention to the terms of the policy, which have not been complied with, inasmuch as no proof of loss has been submitted to the insurance company and there has been no waiver of such an instrument by the company or by any of its representatives. Without admitting or denying liability, nor waiving, nor intending to waive, any of the company's rights, all of which rights are specifically reserved, we remain," etc.

There was no evidence as to any bad faith of the company in refusing or failing to pay the claim after demand, other than as might be inferred from its actions through the statements and letter of the adjuster. The suit was filed on May 8, 1933. The jury returned a verdict in favor of the plaintiffs for $750 principal, the face amount of the policy, $48.07 interest, $187.50 penalty, and $100 attorney's fees. A new trial was denied. The general and special grounds of the motion are sufficiently stated in this opinion.

A decision was originally rendered in this case, affirming the judgment below on condition that the recovery for penalty and attorney's fees be written off. On motion for rehearing the insurance company urged that, since there was no evidence of any express waiver of the proof of loss required by the policy, the testimony for the plaintiffs that the adjuster of the company, a few days after the fire, stated to an agent of the plaintiffs that "there would be no delay in the settlement," that "all he wanted to do was to get the insured to sign the proper papers and settlement would be promptly made," and that "the transaction was complete except getting the insured's signature," could operate against the company only if the statements and conduct of the adjuster and the company constituted an estoppel in pais; that such an estoppel would not

arise in the absence of injury or prejudice to the plaintiffs; that such an estoppel never arose because the adjuster of the company, in reply to the letter dated December 10, 1932, from the plaintiffs' attorneys to the company demanding payment under the alleged statements of the adjuster, wrote to the attorneys the letter quoted in the statement of facts, drawing attention to the terms of the policy requiring proof of loss, and stating that there had been no compliance with and no waiver of such an instrument; that, the fire having occurred on July 29, 1932, and "twelve months next after the fire" for filing suit not having elapsed at the time of the adjuster's letter, the plaintiffs, under decisions of the Supreme Court, still had ample time to furnish the required proofs of loss, and therefore were not injured or prejudiced by the previous words or conduct of the adjuster; and that, the plaintiff, having filed suit on May 8, 1933, without submitting proof of loss to the company, was not entitled to recover, and the instructions of the court with reference to a mere waiver of such proof were erroneous. These contentions were so ably and strongly presented by counsel for the movant that the court was constrained to grant a rehearing. The original decision has been withdrawn, and all questions presented have been considered anew, with particular consideration of those urged on the rehearing.

■ Under the testimony for the plaintiffs, the jury were authorized to find that the insurance company, by its adjuster, in effect admitted and recognized its liability for the claim of the plaintiffs to their authorized agent, and agreed to pay the amount of the policy merely upon their signing a receipt or such final settlement paper as the company would prepare and present to them merely for their "signature," without requiring the furnishing of sworn proof of loss.

■ It is true that, in the absence of an express stipulation in the policy that the furnishing of proofs of loss shall be a condition precedent to a recovery, the failure by the insured to furnish the proofs of loss within the time specified for such proofs will not operate as a bar to an action on the policy, "if the insured furnished the required proofs of loss in time for at least sixty days to elapse between the date upon which they were furnished and the expiration of the twelve months limitation." *Southern Fire Insurance Co.* v. *Knight,* 111 *Ga.* 622 (36 S. E. 821, 42 L. R. A. 70, 78 Am. St.

216); *Harp* v. *Fireman's Fund Insurance Co.*, 130 *Ga.* 726, 729 (61 S. E. 704, 14 Ann. Cas. 299); *Columbian National Life Ins. Co.* v. *Miller*, 140 *Ga.* 346 (2), 350-352 (78 S. E. 1079, Ann. Cas. 1914D, 408); *Styles* v. *American Home Insurance Co.*, 146 *Ga.* 92 (90 S. E. 718). See also *Peoples Loan & Savings Co.* v. *Fidelity Co.*, 39 *Ga. App.* 337 (147 S. E. 171); *Frye* ·v. *Continental Life Ins. Co.*, 43 *Ga. App.* 849, 851, 852 (160 S. E. 544). All these cases involved merely the question as to what effect the failure to furnish proof of loss within the time limited for its filing would have on the right thereafter to furnish such proof in time to file suit within the limitation above set forth. The effect of a previous waiver or estoppel as obviating the necessity for filing such notice or proof was not considered. But if counsel are right in their contentions that there could be no implied waiver of a proof of loss without the elements of an estoppel, with the consequent necessity of showing injury or prejudice to the insured, it would seem to follow from those decisions that when the adjuster informed the insured that the requirement of the policy as to proof of loss had not been complied with and had not been waived, at a time when they still had opportunity to furnish the proof and file suit, the requirements as to injury or detriment would not be met by the complete loss of the insured's right thereafter to file proof and sue. However, we can not agree with the premise assumed that there can be no implied waiver that is not an estoppel with the required element of injury, or that the statement of liability by the adjuster amounted merely to an estoppel rather than a waiver, or that, even if the principle of estoppel be required, the element of detriment is not shown by the record in this case.

It is quite true that the dividing line between waivers implied from words and conduct and estoppels arising from conduct, particularly in insurance cases, is often so shadowy that our own courts as well as those of other jurisdictions have frequently used the terms interchangeably, and that in particular instances conduct or even words alone may constitute both an implied waiver and an estoppel. This confusion of terms is doubtless the basis of certain decisions and of the obiter expressed in the opinion of the United States Supreme Court in Globe Mutual Life Ins. Co. *v.* Wolff, 5 Otto, 326 (24 L. ed. 387, 390): "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement

of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions." · This statement, however, is contrary to the weight of general authority, and is not the rule adopted in this State. The distinction between waiver and estoppel and their legal incidents was very clearly stated by Chief Justice Russell, then Judge of this court, in *Kennedy* v. *Manry, 6 Ga. App.* 816 (3), 818 (66 S. E. 29), in a case which forms the basis of much of the text in 21 C. J. 1115, 1116: "Waiver and estoppel are not synonymous terms. Waiver belongs, in a sense, to the family of estoppel; and yet estoppel in pais has connections that are no kin to waiver. Waiver is voluntary and intentional, estoppel in pais may arise from an involuntary and unintentional act; estoppel results from an act which operates to the injury of the other party; there may be a waiver although the opposite party is beneficially affected. Waiver depends upon what one himself intends to do; estoppel depends rather upon what he caused his adversary to do." See also, in this connection, *Studdard* v. *Hawkins, 139 Ga.* 743, 747 (77 S. E. 116), where it was said: "Waiver and estoppel are often similar; but while the words are frequently used as equivalent terms, they are not identical." There are numerous well-considered cases to the effect that there may be an implied waiver by declarations, acts, or conduct which would be insufficient to create a technical estoppel. Queen Insurance Co. *v.* Young, 86 Ala. 424 (5 So. 116); Cassimus *v.* Scottish Insurance Co., 135 Ala. 256 (33 So. 163); Loftis *v.* Pacific Mutual Life Insurance Co., 38 Utah, 532, 553 (114 Pac. 134); 21 C. J. 1116; 32 C. J. 1341, 1342; 14 R. C. L. 1181, § 357.

Under the above-quoted tests, the testimony as to the original declarations of the adjuster fully authorized a finding that they constituted an implied but absolute waiver of proof of loss, and not merely an estoppel. This is true because the statements of the adjuster, as testified, were voluntary and intentional, and his acts and conduct were not involuntary, unintentional, and dependent for their efficacy on what they caused the insured to do. Under the Civil Code (1910), § 2490 (Code of 1933, § 56-831),

"an absolute refusal to pay *waives* a compliance" with regulations prescribed by the insurer "as to notice and preliminary proof of loss." It is equally true that, if the insurer admits or declares its liability to pay a claim, after loss, "it constitutes a *waiver* of requirements of the policy as to notice and proofs of loss. Waiver thus occurs where the company promises to pay the loss or the amount of an appraisement when made." 33 C. J. 32, § 693, and cit. There is no sound distinction between a waiver of proof of loss by a refusal to pay and a waiver by a promise to pay. If anything, the waiver would be more strongly implied by the promise to pay than by the refusal. In *Philadelphia Fire Insurance Co.* v. *Burroughs,* 176 *Ga.* 260, 262 (168 S. E. 36), the Supreme Court dealt with the acts of an adjuster with regard to a forfeiture provision in the policy as "a waiver," and held that there was no error in a charge submitting to the jury the question whether the conduct of the adjuster was "a waiver."

The instruction of the trial court in that case submitted merely the question as to whether the terms of the policy were "waived" by the act of the adjuster in writing to the insured to make up an estimate of his loss, without submitting any question of estoppel because of detriment to the insured. In *Corporation &c. Assurance* v. *Franklin,* 158 *Ga.* 644 (1-3), 652 (124 S. E. 172), the distinction between waivers and estoppels in insurance cases was also recognized. In *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (8), 300 (27 S. E. 975), the act of an insurance company in entering with the assured into an arbitration to ascertain the amount of loss was treated as a waiver of proofs of loss. There are many physical precedents in cases where the acts and conduct of insurers in connection with policy requirements as to proof of loss were referred to or treated as a waiver of such proof, although the question as to an estoppel was not discussed, and in some of the decisions the silence or other conduct of the insurer seems to have amounted more to an estoppel than to a waiver, or to both an estoppel and waiver. See *Alston* v. *Phenix Insurance Co.,* 100 *Ga.* 287 (2) (27 S. E. 981); *Great American Co-Operative Fire Association* v. *Jenkins,* 11 *Ga. App.* 784 (2), 786 (76 S. E. 159); *Goldman* v. *Ætna Ins. Co.,* 30 *Ga. App.* 715 (119 S. E. 338); *Ætna Ins. Co.* v. *Mosely,* 47 *Ga. App.* 25 (2), 30-32 (169 S. E. 695); *Life Insurance Co. of Va.* v. *Williams,* 48 *Ga. App.* 10 (2),

18-22 (172 S. E. 101); *Fireman's Fund Ins. Co.* v. *Hardin,* 40 *Ga. App.* 275 (149 S. E. 318). The decision in the last-cited case, prepared by the writer of this opinion, is strongly relied on. It is contended, on rehearing, that the present holding and the decision in the *Hardin* case are in direct conflict. It is urged that what the company failed to do in the *Hardin* case, which caused it to become estopped, is exactly what it did in this case; and yet that the proof of loss called for by the defendant's letter is held not to have avoided an estoppel. As we see it, the *Hardin* case and this case are quite different. In that case the insured wrote to the company that he considered that he had complied with the requirement of the policy as to proofs of loss, but that if the company deemed otherwise, it was requested to forward such blanks for execution as it saw fit, and that if it failed to do so, he, the insured, would understand that the proofs of loss already made were considered satisfactory. To this letter the company failed to reply, but, after awaiting the expiration of the period provided for making proofs and after being sued on the policy, it sought to dismiss the action because no sufficient proof had been made as required by the terms of the policy. The question in that case, as stated in the opinion, was, "did good faith and fair dealing require in the ordinary course of business an answer to these letters?" The conduct of the defendant company was loosely referred to as "waiver by estoppel." In fact it constituted a technical equitable estoppel, since a person may be estopped by his silence, in certain cases, where it is his duty to speak, and where his failure to do so is calculated to cause another to believe in a certain state of things. See 5 Michie's Dig. Ga. R. 225 (d), and cit. In the instant case the language of the company constituted an absolute waiver, whereby the defendant's incidental right, under the contract, to sworn proofs of loss was voluntarily waived by an intentional relinquishment, thus removing such provision from the requirements of the contract, and thereby conferring a positive benefit upon the insured, as distinguished from acts, words, or silence such as might have merely misled the opposite party to his injury.

Where estoppel exists, a consideration for the loss of some right or remedy claimed to be estopped is not required, for that element is either supplied or rendered unnecessary by the loss or detriment which would have been suffered, but for the estoppel, by the party

claiming the estoppel. It might well be true that if the essence of a particular waiver could be conceived of as amounting to a new contract, with new promises or new rights and obligations supplanting or vitally modifying the essential elements of the subject-matter of the contract itself, a consideration by way of mutual promises, an advantage to the person waiving, or a detriment to the other party, would be required. See 67 C. J. 297. But if the waiver is merely a relinquishment or abandonment of some incidental right, benefit, or advantage under the old contract, such as a method of procedure or in insurance cases a right to receive a sworn proof of loss, a consideration is unnecessary. 67 C. J. 297, 298. The sole purpose of requiring sworn proofs of loss is to enable the insurer to pass upon and determine the question of its liability and the extent thereof. If after investigation and inspection, that is, with knowledge of the facts and in the absence of fraud, it has reached a definite conclusion upon all matters which the required proofs of loss are intended to subserve, why should not the insurer be permitted to waive a needless procedure, troublesome for the insured to make and for the insurer to consider? The doctrine of waiver has often been invoked to afford relief from forfeitures, irrespective of the question of consideration, or of the unilateral character of the waiver. 67 C. J. 297, 298, and cit. The rule has been thus stated by Judge Powell in *Gray Lumber Co. v. Harris,* 8 *Ga. App.* 70 (3), 76 (68 S. E. 749): "Waiver . . usually needs no consideration to make it effective. . . Waivers not based on consideration have been too frequently enforced by the courts to demand any citation of authority for the proposition that consideration is not an essential of waiver."

An important legal element of a waiver, either express or implied, is that the party voluntarily making it must have knowledge of the facts, and that it be given or procured without fraud by the other party. Where this is true, the party making the waiver can not afterwards take back the right which was thus surrendered. When some incidental right has once been waived and relinquished, and thus eliminated as an incidental element of the contract, it can not be reclaimed. This is true even though the relinquishment be made "in the absence of any consideration therefor or of any change of position by the party in whose favor the waiver operates." 67 C. J. 313, 314, and cit. See also *Board of Education* v. *Day,*

128 *Ga.* 156 (57 S. E. 359); U. S. Fidelity & Guaranty Co. *v.* Miller, 237 Ky. 43 (76 A. L. R. 12, 34 S. W. (2d) 938). Both by reason and case authority, these rules are made applicable to waivers of notice or proof of loss in insurance cases. The decision to the contrary in Hahn *v.* Guardian Assurance Co., 23 Or. 576 (32 Pac. 683, 37 Am. St. R. 709), which is the only citation supporting the text in 5 Joyce on Insurance (2d ed.), 5591, § 3371, and 14 R. C. L. 1346, § 517, runs counter to the great weight of authority. See Roberts *v.* Ins. Co. of America, 94 Mo. App. 142 (72 S. W. 144); Burgess *v.* Mercantile Town Mutual Ins. Co., 114 Mo. App. 169 (4) (89 S. W. 568); Dobson *v.* Hartford Fire Ins. Co., 86 App. Div. 115, 83 N. Y. Supp. 456 (aff. 179 N. Y. 557, 71 N. E. 1130); Jones *v.* Howard Ins. Co., 117 N. Y. 103 (22 N. E. 578); Queen of Arkansas Ins. Co. *v.* Forlines, 94 Ark. 227 (126 S. W. 719); Phœnix Ins. Co. *v.* Spiers, 87 Ky. 285 (8 S. W. 453); Pretzfelder *v.* Merchants Ins. Co., 123 N. C. 164 (31 S. E. 570, 44 L. R. A. 424); 26 C. J. 392, § 504.

It follows, therefore, that if, as we think is true, the original statements of the adjuster, which the jury were authorized to find recognized the liability of the insurance company for the ·loss and agreed to pay the claim of the insured merely upon obtaining the signature of the insured on a final settlement receipt, constituted an implied but absolute waiver of the sworn proof of loss required by the policy, and not merely an estoppel requiring injury or prejudice to the insured, it was not necessary, as in the case of a technical estoppel, for the plaintiffs to have shown any detriment to themselves by a change. in their legal rights or position. It also follows that, if such a waiver was made with knowledge of the facts and in the absence of fraud, it could not be withdrawn or nullified by the subsequent letter from the adjuster, even if it be assumed that such letter, denying that a waiver had been made, should be given the force and effect of an attempted withdrawal.

■ Moreover, we think that the verdict was authorized even upon the theory of an estoppel, that is, where a consideration by reason of a detriment sustained by the insured from the declarations and acts of the insurer is required. By the terms of the policy the loss was not payable until sixty days after proof of loss was received by the company. The fire occurred July 29, 1932. A few days thereafter, the alleged statements by the adjuster,

recognizing the liability of the company and agreeing to pay the insurance, were made. The evidence shows that the plaintiffs thereupon relied on this assurance by awaiting the promised payment and failing to file a sworn proof of loss with the company. Not until six months later, on December 22, 1932, after they had written to the company on December 12, 1932, calling attention to the alleged previous statements of the adjuster and their reliance thereon, did the company through the adjuster attempt to change the status already created, by then denying the alleged statements and for the first time stating that there had been "no waiver" of the proof of loss. Although the twelve months period after the fire within which suit could be filed under the limitation in the policy had not then expired, so that proof of loss could still have been filed, yet, because of the alleged statements of the adjuster, both the time for obtaining a voluntary payment of the loss and the time for filing suit to enforce it in case of a refusal, were manifestly and necessarily postponed because of the six-months delay in the attempted denial, nullification, or withdrawal of the prior statements and their legal effect. This is true under the policy because not only was the loss not payable until sixty days after the company received the proof of loss, but suit could not be filed even within the twelve months period "until after full compliance by the insured with all the foregoing requirements" of the policy. Thus, the element of injury or prejudice to the insured was supplied, even upon the theory that no implied waiver could operate against the insurer except as an estoppel, or except upon a consideration by way of benefit to the insurer or detriment to the insured, which we do not think was necessary.

■ Under the Civil Code (1910), § 3434 (Code of 1933, § 57-110), interest eo nomine is not recoverable except where the demand of the plaintiff is liquidated and made "fixed or certain" by "agreement or otherwise." *Insurance Co. of North America* v. *Folds,* 42 *Ga. App.* 306 (4) (155 S. E. 782). Since the jury were authorized to find from the evidence that the insurance company through its representative agreed to pay the full face amount of the policy covering the undisputed total loss, the verdict was not illegal because it included interest.

■ The term "bad faith," as used in the Civil Code (1910), § 2549 (Code of 1933, § 56-706), is "not the equivalent of actual

744

fraud," but means "any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policy-holder to pay according to the terms of his contract and the conditions imposed by statute." *Colton States Life Ins. Co.* v. *Edwards*, 74 *Ga.* 220 (4); *American Insurance Co.* v. *Bailey*, 6 *Ga. App.* 424 (7) (65 S. E. 160). Under the doubtful questions of law involved, it can not be said that the company's failure to pay after demand was a "frivolous or unfounded refusal" within the rule stated. In the absence of any evidence of actual bad faith, the verdict for a penalty and attorney's fees was therefore unauthorized.

■  The verdict for the principal amount of the policy and interest being authorized, and the general and special grounds relating to the alleged waiver or estoppel being without merit under the foregoing rulings, the original judgment of this court is adhered to upon the rehearing, and the judgment of the court below is affirmed upon condition that the plaintiffs, at or before the time the remittitur is made the judgment of the trial court, will write off the erroneous items of $187.50 penalty and $100 attorney's fee, otherwise the judgment is reversed.

*Judgment affirmed on condition. Adhered to on rehearing. Stephens and Sutton, JJ., concur.*