**OHIO HARDWARE MUT. INS. CO. v.
NORTHEAST GEORGIA LAND
CO., Inc., et al.
No. 7795.**

Circuit Court of Appeals, Fifth Circuit.
Nov. 9, 1935.

Rehearing Denied Dec. 6, 1935.

Alex W. Smith, Jr., of Atlanta, Ga., for appellant.

Edgar Watkins, of Atlanta, Ga., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On June 14, 1933, Northeast Georgia Land Company, one of the appellees, a family corporation officered and owned by the De La Perriere family, was the owner of a mercantile building in Hoschton, Ga. The other appellee, the Bank of Hoschton, also officered and to an extent owned by the same family, was at that time the hold-er of a duly recorded security loan deed on the property.

Matters standing thus, A. L. De La Perriere, president of the land company, and vice president of the bank, desiring to protect both interests, applied through one E. C. Palmer, an insurance solicitor, for insurance on the property. On that day he wrote an unsigned letter to Palmer, as follows: "I looked up policies on store buildings. It expires on June 28th. You can write $12,500 on three-store bank building, Northeast Georgia Land Company, loss payable to Bank of Hoschton * * * You can mail me policies and I will mail check in a few days."

Following the receipt of this letter, Palmer had a conversation with Zachary Insurance Agency, of Atlanta, Ga., representing appellant, which resulted in that company on June 28th, through its Georgia Agency, issuing a standard form policy, having attached to it this clause:

"Loss Payable, Zachary Insurance Agency, July 28, 1933.

"It is agreed that any loss or damage that may be ascertained and proven to be due the assured under this policy, shall be held payable to the Bank of Hoschton, Hoschton, Georgia, as their interest may appear, subject, nevertheless, to all conditions of the policy.

"Attached to and forming a part of policy Number D-220455 of the Ohio Hardware Mutual Insurance Company of Coshocton, Ohio, issued at its Atlanta, Georgia, Agency."

"[Signed] Zachary Insurance Agency,
"R. H. Zachary, Agent."

The policy contained the usual sole ownership clause,[1] the usual clause against concealment and misrepresentation,[2] and a general clause as to a mortgagee or other interest than that of the named assured, covered by the policy.[3]

[1] "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

[2] "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein."

[3] "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

The property having been destroyed by fire, and appellant having, upon the claim of breach of the sole ownership clause, denied liability, appellees brought this suit.

At the trial appellant relied, as conclusive of the case, upon the holding in Sun Ins. Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 74, 76 L. Ed. 229 (a suit upon a fire policy issued on wool, containing a provision against encumbrance by chattel mortgage) that by attachment of a simple loss payable clause the company "did not waive the condition against incumbrance nor consent to the giving of the chattel mortgage, and that there was nothing in the situation which deprived them of their defense based upon that condition." Appellees argued with effect below that the language of the clause in this case and the conditions under which it was attached were of different purport from those in the case appellant relies on, in that here the loss is payable "as their interest may appear," and the proof establishes that such clause was the one usually employed by insurance companies in Georgia to afford protection in situations like this. This appeal tests whether the judgment for appellees was right, that is, whether the attachment of the loss payable·clause relied on here, did, as the District Judge thought, constitute a waiver of the sole ownership clause and a consent to cover by the insurance, the interest of both bank and land company.

Appellant, planting itself squarely on the Scott Case, argues that in taking the view he did, the District Judge, in distinguishing this case from the Scott Case, gave to the words "as their interest may appear," and to the testimony as to the usual course of dealing in Georgia in regard to attaching such clauses, a differentiating significance and effect beyond that they were entitled to. It insists that it was intended by the Scott Case to broadly hold that one who relies on waiver and consent as to ownership and interest clauses of a standard fire insurance policy must be able to point to a definite and explicit indorsement of such consent on the policy; that an inference of consent may not be drawn from an indorsement like this one, either standing alone or aided by oral testimony that it is commonly used by insurance companies to cover ownership situations like the one involved here. Appellees, on their side, point out that in addition to the fact in the Scott Case that the loss was made payable generally, instead of, as here, as "interest may appear," there was

nothing in that record as to any "customary use in the community where the policies were written of a loss payable clause as a consent to change of title or encumbrance of the subject matter of the insurance." Touching that, it points to the undisputed testimony in this record of Mr. Smith, an insurance agent for eighteen years in Georgia, and a member of the executive committee of the National Association of Insurance Agents, as to the customary use of this clause in Georgia, to protect the interest of others than the assured. On direct examination he said: "My knowledge of my own business is that I use a loss payable clause, and/or a form of mortgage clause, but in my business I could safely admit that the loss payable clause is more generally used than the mortgage clause to protect the interest of other than the assured."

Examined by the court, he testified: "The only loss payable clause that we use is the one prescribed by the underwriters, I think the language is the same in all of them. The language of the loss payable clause is 'It is agreed that any loss or damage that may be ascertained and proven to be due the assured under this policy, shall be payable to ——— as his or its interest may appear, subject, however, to all conditions of this policy.' "

On cross-examination he testified to the use also of the New York standard mortgage clauses, with and without full contribution, each beginning, just as the clause in question here does, "Loss or damage if any, under this policy shall be payable to ———, as mortgagee or trustee, as interest may appear," but concluding with special provisions for separate and independent insurance to the mortgagee, more favorable to him than that granted under the clause at issue, as well as of many other forms of mortgage or security clauses, all pointing out that there is a mortgage or security debt on the property. Among these forms he identified the Metropolitan mortgage clause, which, reciting that the company having taken a deed to the property to secure its debt, provides that the loss or damage shall be payable to it "as its interest may appear."

He further testified: "I would like to state, Your Honor, that the reason an agent usually attaches a loss payable clause instead of a mortgage clause, unless specifically requested, is because the conditions of the mortgage clause are much more rigid

on the company than those of the loss payable clause. And speaking out of my own experience and observation, the companies usually prefer the loss payable clause to the mortgage clause. They issue that kind of a clause unless a specific form is requested—that is the practice and the preference of the companies, in my experience."

In support of their position that the attachment of this clause must be held to constitute a waiver of the sole and unconditional ownership clause, and a consent to insure the bank's interest, appellees urge the rule that "in case of ambiguity, that interpretation should be adopted which is most favorable to the insured, if such interpretation be not inconsistent with the words used." Royal Insurance Co. v. Martin, 192 U. S. 149, 162, 24 S. Ct. 247, 48 L. Ed. 385. They argue that "the language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102; Aschenbrenner v. U. S. F. & G. Co., 292 U. S. 80, 54 S. Ct. 590, 78 L. Ed. 1137. Invoking the decisions of the Georgia courts as to the effect of a clause of this kind attached to a Georgia policy, they cite Aetna Ins. Co. v. Mosely, 47 Ga. App. 25, 169 S. E. 695, in which certiorari was refused. This case interpreting and explaining the effect of Liddell's Case (Hartford Fire Ins. Co. v. Liddell Co.), 130 Ga. 8, 60 S. E. 104, 107, 14 L. R. A. (N. S.) 168, 124 Am. St. Rep. 157, holds that an insurance policy written in Georgia, containing a loss payable clause, "as interest may appear," is to be regarded in Georgia as an acknowledgment that the person named in the clause "has some interest in the property, and to the extent of that interest as then existing agrees to pay to such person out of its liability on the policy."

As making strongly against appellant's contention, for the broad effect of the decision of the Supreme Court in the Scott Case, appellees point finally to the fact that though the majority opinion in Atlas Reduction Co. v. New Zealand Fire Ins. Co. (C. C. A.) 138 F. 497, 9 L. R. A. (N. S.) 433, where the loss was, as here, payable "as interest may appear," has been the subject of great contention and disagreement, and was particularly debated and discussed in the majority and dissenting opinions of the Circuit Court of Appeals in the Scott Case (Home Ins. Co. of N. Y. v. Scott), 46 F. (2d) 10, the Supreme Court does not approve or even refer to its holding, but rests its opinion on Bates v. Equitable F. & M. Ins. Co., 10 Wall. 33, 19 L. Ed. 882, a simple loss payable clause as Scott's was. This, they say, makes it clear that if it was not intended by the Scott Case to disapprove the rule of the Atlas Reduction Case, neither was it intended to approve it.

In Bennett v. Cosmopolitan Fire Ins. Co., 50 F.(2d) 1017, 1020, we considered the effect on a standard policy insuring both building and chattels, and containing the usual clause against encumbering personal property with a chattel mortgage, of attaching to the policy a New York standard mortgage clause payable to one who held the mortgage covering both dwelling and furniture. Though nothing was said in the indorsement about a chattel mortgage, we held that the provision in it, "loss or damage * * * shall be payable to O. J. Austin as first mortgagee as interest may appear," was an effective endorsement of consent to the chattel mortgage. The majority opinion in the Atlas Reduction Case, denying effect to the loss payable clause "as interest may appear," was cited to us against this view. We thought then that the dissenting opinion had correctly apprehended the scope and effect of Bates v. Equitable Fire & M. Insurance Co., supra. We thought that though a simple loss payable clause would not satisfy the policy requirement for indorsement of consent, a loss payable clause, showing that the loss payee had a mortgage or other interest in the property, would.

Appellees urge upon us now that the clause in question here is the same in effect as the one in the Bennett Case. We agree with appellees. There the clause without expressly consenting to the chattel mortgage, named Austin as first mortgagee as "interest may appear." Here, without stating what interest the bank held, it as clearly declared as the mortgage clause in that case did, that the loss payee held some interest in the property, and as clearly agreed that that interest would be protected. We think it quite clear from the evidence in this case, that the clause in question was used to evidence, and that it does evidence, a waiver of the condition for sole and exclusive ownership of the property, and a consent to cover and protect whatever interest the loss payee held in it. We

think this is sufficiently shown by the rider, unaided by Smith's testimony and the Georgia decisions appellees invoke. But if the rider does not have this effect standing alone, we think it certainly does when considered in the light of the undisputed testimony, that this is the form the insurance companies select to protect interests other than that of the named assured, when no special form is requested or presented, and that they select this form because the protection afforded such interests under it is less burdensome to them than when the New York standard mortgage or other special form is selected.

When the full loss payable attachment in question here is read in the light of the other provisions of this policy, and of the evidence as to the usual and customary procedure adoped by insurance companies in cases of this kind, we think it inescapable that appellant's Georgia agency, having in mind the general provisions of the policy that any interest in it other than that of the insured would stand covered as might be expressed in the pertinent rider,[4] determined that instead of using one of the onerous forms to protect this interest, it would use one more favorable to the company, a loss payable clause "as interest may appear," which, while protecting the loss payee, would afford it not a different, but the same protection afforded the named assured.[5]

If we could agree with appellant as to the sweeping effect of the decision in the Scott Case, we should of course agree with it that the judgment below was wrong. But we cannot take that view. We think it plain that that case merely decided that upon the facts there shown, a simple loss payable clause was not effective as a waiver or as consent. We think it plain that it did not, it could not, decide, for the question was not before it, the effect of the attachment of a loss payable clause "as interest may appear" in a state and under conditions like those testified to here.

Because we think that the loss payable clause does, under the evidence, comply with the policy's provisions requiring waiver and consent to be indorsed on it, we have not considered appellees' other contention in support of the judgment below. This is that Palmer, who solicited the insurance, was under Georgia law [6] the agent of appellant, that his knowledge was imputed to the company,[7] and that the company, having selected its own clause to provide insurance for the interest Palmer had agreed to protect, is estopped now to deny its adequacy and effectiveness.

We think the judgment was right. It is affirmed.

5 c/f for the effect of the two forms, Syndicate Ins. Co. v. Bohn (C. C. A.) 65 F. 165, 27 L. R. A. 614; Delaware Ins. Co. v. Greer (C. C. A.) 120 F. 916, 61 L. R. A. 137.

6 Georgia Code 1933, § 56-501.

7 Georgia Code 1933, § 4-309: "Notice to the agent of any matter connected with his agency shall be notice to the principal." Blackstock v. Jefferson Ins. Agency, 23 Ga. App. 642, 99 S. E. 142; Globe & Rutgers Fire Ins. Co. v. Walker, 150 Ga. 163, 103 S. E. 407; Johnson v. Ætna Ins. Co., 123 Ga. 404, 51 S. E. 339, 107 Am. St. Rep. 92.